STATE OF NEBRASKA, EX REL. FRANK N. PROUT, ATTORNEY GENERAL, V. MARTIN I. AITKEN.

FILED JULY 10, 1901. No. 12,011.

Commissioner's opinion, Department No. 1.

1. **Act Not Void for Uncertainty.** Act of March 27, 1901, relating to the government of cities of 40,000 to 100,000 inhabitants, not void for uncertainty as regards the office of tax commissioner

2. **Uniform Taxation.** The provisions of the act as to tax commissioner do not violate the constitutional requirement of uniform taxation.

3. **Special Legislation.** It is not, as to tax commissioner, void as being forbidden special legislation.

4. **Not an Amendatory Act.** It is not an amendatory act, nor subject to the constitutional requirements as to amendments.

5. **Provisions Covered by Title.** Its provisions, as to tax commissioner, are sufficiently covered by its general title.

ORIGINAL action in the nature of a quo warranto to oust the respondent from the office of tax commissioner of the city of Lincoln. *Dismissed.*

*Frank N. Prout, Attorney General,* and *Chas. O. Whedon,* for the state.

*E. C. Strode* and *D. J. Flaherty, contra.*

HASTINGS, C.

This is an original action by quo warranto to oust the defendant from the office of tax commissioner of the city of Lincoln. The petition alleges that the defendant, about April 10, 1901, assuming that an act of the legislature of March 27, 1901, created the office of tax commissioner, qualified as such officer, claiming to have been appointed by the mayor with the consent of the city council. It is alleged that the defendant is not an assessor of any precinct in Lancaster county; that since April 10 he has unlawfully held and exercised the office of tax commissioner,

and is now engaged, with certain deputies, whom he claims
to have appointed with the consent of the mayor and city
council, in assessing and valuing for taxation all the prop-
erty within the city not exempt from taxation, except rail-
road property; that he assumes the right to provide blank
forms for listing property and making assessments of it,
and assumes the right to administer oaths to the owners;
assumes to perform all the duties which that act pretends
to empower a tax commissioner to do, and that so much
of that act as pretends to create the office of tax commis-
sioner is unconstitutional, and asks that he be ousted
from such office.   The defendant answers that the legisla-
ture of the state of Nebraska at its twenty-seventh session
passed an act entitled "An act to incorporate cities of the
first class having a population of more than 40,000 and
less than 100,000 inhabitants; to define, regulate and pre-
scribe their organization, duties, liabilities, power, and
government, and to repeal article 1, of chapter 13a of the
Compiled Statutes of 1899"; that this act was approved
March 27, 1901, containing an emergency clause, and has
been ever since one of the laws of the state of Nebraska in
full force and effect; that the city of Lincoln was on and
prior to March 27, and now is, a city of the first class hav-
ing more than 40,000 and less than 100,000 inhabitants,
and is governed by the provisions of that act; that section
13 of the act provides: "The following officers shall be
elected by a plurality vote of the electors of the city, to-
wit: * * * tax commissioner * * * The term of all
elective officers under this act shall commence on the Tues-
day next after their election, and provided further that the
office of tax commissioner shall be filled by appointment
by the mayor for a term of two years after the passage of
this act, after which time the said office shall be filled by
election as herein provided"; that section 33 of said act
provides as follows: "The tax commissioner shall be the
assessor of the city; he shall hold his office for a term of
two years, and until his successor shall be elected and
qualified; he shall on or before the first day of April in

each year appoint, by and with the consent of the mayor and council, not to exceed five deputies for the purpose of assessing the real and personal property within the corporate limits of the city subject to taxation. The tax commissioner shall by himself and his deputies assess and value at a fair cash value all property within the corporate limits of the city which is not exempt by law from taxation. Provided that the tax commissioner shall take the valuation and assessment of railroad property within the city limits from the returns made by the state board of equalization to the county clerk of the county in which the city is located. Each of the deputies so appointed, before entering upon the discharge of his duties, shall take oath to impartially list and assess all property required by him to be listed and assessed at its fair cash value, and shall give bond in such sum as may be required by ordinance for the faithful discharge of his duties. The deputies so appointed shall be under the direction of the tax commissioner, and shall be governed by such regulations as may be prescribed for the purpose of securing just and equitable assessments. The deputies shall be allowed for their services the same per diem and for the same length of time as is allowed to the precinct or county assessor by the law of the state. The tax commissioner shall provide such blank forms of schedule as in his judgment may be required for the purpose of listing property and making assessments, and he and his deputies shall have the same power and authority to compel full and complete listing of property for taxation as assessors under the state law, and they and each of them shall have power and authority and it shall be their duty to administer oaths to all persons required by law to list property for taxation in like manner as is required by the revenue laws of the state. The tax commissioner shall have such other and further duties and powers as may be defined or prescribed by ordinance" (Session Laws, 1901, ch. 16) ; that respondent was duly appointed tax commissioner and has qualified as such about April 1, 1901, in compliance with said law, and is

now in the discharge of the duties of said office; admits that he is assessing for taxation all property in the city not exempt, except as provided in the act, and that he as- sumes the right to provide forms of schedule for such pur- pose, and to administer oaths to the owners of property; that his office is duly created and established under the laws of the state, and himself duly appointed and qualified, and is engaged in the discharge of his official duties, and he asks to be dismissed with costs. To this answer a gen- eral demurrer is interposed, and the relator asks judgment as prayed.

It will be seen that the sole question presented for con- sideration here is the constitutionality of this act of March 27, 1901, or at least of so much of it as seeks to create the office of tax commissioner. In relator's brief and argu- ment it is objected, first, that this law is so vague and un- certain as to be inoperative and void for uncertainty; second, that it violates the provisions of our state consti- tution in regard to uniformity of taxation; third, that it is special legislation, and so prohibited by section 15, arti- cle 3, of the constitution; fourth, that it is void, as being a violation of section 11, article 3, of the constitution, in that it amends the general revenue law in several places which are not referred to in the act, nor the original pro- visions repealed; and fifth, that it violates the same sec- tion of the constitution, in containing provisions not cov- ered by its title. It will be observed that we are concerned here with this act only in so far as it seeks to create the office of tax commissioner, and that the relator, to make out his case, must establish either that the entire act is unconstitutional or else that those parts of it which create the office of tax commissioner are so. A large share of the argument of counsel was directed to the propo- sition that certain provisions of this act, not directly relating to the creation of the office of tax commissioner, but relating to the manner in which he shall discharge his duties, and in which the city council, in levying taxes, should proceed, are unconstitutional. At the same time no

attempt was made to establish the unconstitutionality of the act as a whole.

The first contention, that the act is too vague to be operative, can not be sustained. It is urged principally upon the ground that the tax commissioner is required to make oath to the correctness of the entire assessment, and is empowered to appoint five deputies to assist in the making of it, and it is urged that such assistance is incompatible with personal knowledge on his part of the correctness of the return. It is answered that a similar objection could be made to the constitutionality of any of our statutes providing for the work of a deputy and a return to be made by the principal. It is not thought worth while to consider this objection further. The regular precinct assessor is required to make such a return, and is authorized under certain circumstances to employ a deputy. Compiled Statutes, ch. 77, art. 1, sec. 51. The tax commissioner, like the assessor, is only required to make oath to his own diligence, and that he verily believes that his returns set out the true value. If the law is incomplete in some respects, it could hardly be objected to as inoperative for such reason, for we find at the end of section 33 the provision "the tax commissioner shall have such other and further duties and powers as may be defined or prescribed by ordinance." If it be found necessary or desirable that he should require a like return from his deputies, it may be easily provided.

It is objected that the deputies are to be under the direction of the tax commissioner and governed by such regulations as may be prescribed for the purpose of securing just and equitable assessments, but surely there can be no objection to this in view of the provision in section 33, just quoted.

A more serious objection is lack of uniformity. Section 1, article 9, of our state constitution requires that the valuation within the same taxing district shall be uniform. It is complained that under this act all property is to be assessed at its fair cash value, except railroad property, whose

valuation is to be taken as returned by the state board of equalization, which latter is required to assess it at its actual value. It is urged that under the general revenue act personal property is to be assessed at its fair cash value, and real property at its fair value, estimated at the price it would bring at a voluntary sale where public notice had been given, upon a payment of one-third cash and the balance secured by mortgage on the property. It is further complained that under the general revenue act property in transit is to be assessed at the residence of the owner, but that this tax commissioner and his deputies are authorized and required to assess at its fair cash value all the property in the city. It is further objected that under section 27 of the revenue law, in making up the amount of credits with which a person shall be assessed, he is entitled to deduct the amount of all bona-fide debts owing by him; that no such provision is left in the new act. It is claimed, too, that the provision of section 2 of the revenue act, for deducting any depreciation occasioned by public easement, and that for deducting any increase of the value of land by reason of live fences, fruit and forest trees, grown and cultivated thereon, are both to be disregarded. To this it must be said in the first place that the taxation proposed to be levied upon this assessment is city taxation, and is governed by the provisions of section 6, article 9, of the state constitution, which requires that such taxes shall be "uniform in respect to persons and property within the jurisdiction of the body imposing the same." It is hard to see how any requirement of uniformity is violated, in letter or in spirit, by the fact that outside the municipality, or within the municipality as regards other than municipal taxes, a different method of valuation prevails; the municipal tax falls equally on all property in the jurisdiction, and the state and county taxes are not disturbed. No provision of our state constitution requiring, in terms, that the municipal taxation shall be levied and collected in the same manner as state taxation is pointed out to us. On the contrary, the constitution, as

above cited, has expressly authorized the legislature to vest the method of imposing their municipal taxes in the corporate authority, towns and villages, and has only limited their powers in respect to raising revenue, by the requirement that special assessments shall go against the property benefited, and municipal taxes shall be uniform as to persons and property within the jurisdiction. It is hard to see how the fact, if it were a fact, that some things which the tax commissioner is authorized to do are unconstitutional would do away with his office, in any event. It must be conceded that the municipal authorities have the right to tax, because the legislature is, by the constitution, authorized to organize municipalities and invest them with the power of taxation. This taxation must be according to the value of property. We think it must be conceded that it is within the constitutional power of the legislature to authorize the city to make its own valuations of property within its limits, so long as the result is that the city taxes are uniform in respect to persons and property within the municipality, and there is no interference with state and county taxes. The provisions of the act in question are that property, which is not exempt from taxation, shall be valued. If the general revenue law is to be construed as exempting from taxation credits against which the owner can show bona-fide debts to an equal amount, and all increase of value of property because of fruit and forest trees, we see no difficulty in applying it to city property under the act in question, and upholding both laws. If, however, it should be found that such exemptions are not provided for in the latter act, we see nothing unconstitutional in holding that as to property within the limits of cities the former law is so far modified that in respect to municipal taxation there are no such exemptions. As long as this is held to apply, as it must, only to municipal taxes, the latter would still be uniform throughout the municipality, and would not infringe in any degree upon the constitution. In any event, the fact that unconstitutional requirements are made of an officer,

or unconstitutional duties are imposed upon him, would not prevent his holding the office and exercising constitutional and appropriate duties attached to it. The provision that justices of the peace might both fine and imprison, though unconstitutional, has never been supposed to oust all justices in the state of Nebraska from their offices. The provision that railroad property shall be assessed at the valuation fixed by the state board of equalization certainly can not be held, whether constitutional or not, to deprive the tax commissioner of all authority to assess property within the corporation. Our constitution expressly provides that property shall be taxed according to its value, to be ascertained in the manner provided by the legislature. The legislature in its wisdom has decided that the value of railroad property can be more accurately and justly estimated by the state board of equalization than by local assessors, and has exercised its constitutional prerogative by providing that railroad property shall be assessed in that manner. Whether or not it is reasonable to suppose that the state board of equalization would have more knowledge and a better opportunity to make a just valuation of such property than local assessors is quite unnecessary to be determined in deciding upon respondent's right to act as tax commissioner. Why may not several valuers constitutionally act upon different kinds of property, or upon the same property, for the purpose of different taxes? The real objection to this act on the ground of uniformity is, evidently, the idea that value is not such a fixed quantity that it is possible for two independent appraisers to agree. If values are fixed for purposes of municipal taxation by one body of assessors, and for county and state by another, it is practically certain that the two will disagree. Enough is said above to indicate an opinion that the only uniformity required as to any tax is that it should be uniform throughout the jurisdiction; i. e., that state taxes shall be uniform throughout the state, county taxes throughout the county, and city taxes throughout the city. *Pleuler v. State*, 11

Nebr., 547. Such uniformity would be as well secured by having one set of assessors value property for county taxation, another set for city taxation, and still another for state taxation, as it would by having all the valuations made by one set of assessors, and one appraisement adopted in the levy of all the taxes throughout. With the good or ill policy, relative expense or cheapness of the two methods, this court has nothing to do. The constitution has expressly said that the valuations shall be determined in the manner that the legislature points out. If the legislature chooses a foolish or expensive way, so long as it is not a pretext for some unconstitutional purpose, it must stand.

The complaint that this is special legislation prohibited by section 15, article 3, seems to be based upon the proposition that it is special because of the provision with regard to railroad property. So far as this provision is concerned, it seems sufficient to have pointed out that the office of tax commissioner, and the right of respondent to hold it, does not depend in any degree upon the validity or invalidity of this provision in the act. Whether in discharge of his duties he shall obey and follow this provision or pay no attention to it, does not need to be decided for a determination of his title to the office which he is exercising. In none of the cases cited by counsel for the relator do we find that the conferring of unconstitutional powers upon an officer deprives him of his right to exercise the constitutional ones; nor do we think that an unconstitutional restriction of an officer's powers should be held to deprive him of them altogether. The remedy for an unconstitutional omission to assess property would seem to be mandamus rather than quo warranto. This objection amounts in effect to saying that no general act of the title and for the purpose of this one can be enacted by the legislature of the state of Nebraska, owing to the inhibition upon special legislation. The objection is just as good against any other provision of this charter for cities from 40,000 to 100,000 inhabitants as it is against

the provision for a tax commissioner. So far as the objection of special legislation is concerned, we can see no difference between the provisions of the old charter, section 50, that the assessment of property values as equalized by the county board shall be the assessed valuation for general city taxation, and the provision here. The question whether or not the legislature may classify cities seems to have been conclusively determined in this state. *State v. Graham,* 16 Nebr., 74; *State v. Stuht,* 52 Nebr., 209. In the latter case it was expressly held, without dissent: "If the provisions of a law establishing a class of cities on the basis of population are such that other cities may in the future, without additional legislation, enter the specified class, the law is general."

The further objection that the law is amendatory of the state revenue law and unconstitutional, because of its form, can not be maintained. It is expressly provided by our state constitution that such a charter may contain provisions for municipal taxation. Such provisions are not amendatory of the state revenue law. The fact that the title was comprehensive and not detailed, makes no difference so long as such title is fairly descriptive of the purposes and intention of the act. *State v. Stuht, supra.* To say that this act may be abused and may, in its practical workings, result in a failure of uniformity of taxation is not to establish its unconstitutionality. If all laws which may fail to bring about a just and equal valuation of property and a perfectly fair and equitable adjustment of taxation are to be unconstitutional, it is to be feared that not only the city of Lincoln, but every other municipality in the state of Nebraska, might have to wait a long while for authority to collect its revenues.

It is therefore recommended that this case be dismissed.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion this case is hereby

DISMISSED.