STATE OF NEBRASKA, EX REL. GEORGE T. MORTON ET AL., V. PETER M. BACK ET AL.

FILED OCTOBER 5, 1904. No. 13,605.

1. **Railroads: MUNICIPAL ASSESSMENTS.** In the assessment of railway property for municipal purposes situated in cities of the metropolitan class, such as is required to be listed with and assessed by the state board of equalization for general revenue purposes under the provisions of sections 39 and 40, chapter 77, article I, Compiled Statutes, 1901, as existing prior to the revenue act of 1903, it is made the duty of the tax commissioner or assessor of such city to accept the values of the fractional part of such railroad property situated in the municipality as the same is valued and assessed by the state board of equalization, and apportioned to such city in accordance with the provisions of said act.

2. ———: ———. The proportional share of railway property as valued and assessed by the state board of equalization belonging to and situated in such city and subject to taxation for municipal purposes may be equalized by the proper authorities of such city, by lowering or raising the value of the same, as thus ascertained, so as to bring about uniformity of valuation in respect of all property subject to taxation within the municipality.

3. ———: TAXATION. It is competent for the legislature to provide

for the valuation and assessment of the property of railway companies, such as is required to be listed and scheduled with the auditor of public accounts by sections 39 and 40, chapter 77, article I, Compiled Statutes, 1901, as heretofore existing, by one assessing body, and for ascertaining the value of the whole of such property of any one railway corporation subject to taxation in this state as a unit or as an entirety, and to distribute the value as thus found over the main line or track of such railway company and to the different taxing districts, municipalities, etc., on a mileage basis.

4. Constitutional Law. Such a scheme or plan of assessment and taxation of the property of railway companies as therein provided for state, county and municipal purposes does not violate the provisions of the fundamental law commanding uniformity in the valuation and assessment of property for the purpose of raising needful revenues by the levying of a tax upon all property subject thereto according to its value.

5. ————. The valuation and assessment of the property of a railway company, as therein provided, as an entirety, and the distribution of the value thus ascertained upon a mileage basis over the entire line of such railway does not operate as a changing of the situs of the property assessed. Its effect is only to distribute the value of an organic whole to the fractional parts situated in the different subordinate taxing districts through which the line extends and in which the property is actually situated, which is a legitimate exercise of legislative power.

6. Railroads: TAXATION. In the assessment of railway property for taxation, as therein provided, it is competent for the legislature to classify such property, and provide for the assessment of the same as personalty, and to fix the situs of the property assessed by providing for the valuation of the property as an entirety, and the distribution of the total value to each taxing district according to the number of miles of main track located therein.

7. Constitutional Law. Said sections 39 and 40, as existing prior to their repeal by the revenue act of 1903, are not invalid as taking property by taxation without due process of law. *Chicago, B. & Q. R. Co. v. Richardson County*, 61 Neb. 519, followed.

ORIGINAL application for a writ of mandamus to compel the city council of Omaha to meet as a board of equalization. *Writ denied.*

*T. J. Mahoney*, for relators.

*C. C. Wright, contra.*

HOLCOMB, C. J.

This action is begun in this court in the exercise of its original jurisdiction. The relators pray for a peremptory writ of mandamus to compel the respondents, the city council of Omaha, acting as a board of equalization, to reassemble and hear their complaint relative to the alleged low assessment of certain railroad properties situated within the corporate limits, and to equalize the assessment of such properties by raising the assessed value thereof to conform to the standard of value pertaining to all other property assessed for municipal purposes. The substance of the complaint is that the properties of the railroad companies mentioned in the alternative writ, situated within the city limits, are assessed at but a fraction of their true value, while all other property subject to municipal taxation is assessed at its commercial value. The return of the respondents to the alternative writ discloses that, in the assessment for municipal taxation of the railroad properties complained of, the assessing officer of the city accepted the valuations placed thereon by the state board of equalization and the distributive share thereof apportioned to the city of Omaha as the assessable value of such properties, and that, in the equalization thereof, the respondents, acting as a board of equalization, raised the assessments five times the value as fixed by the state board of equalization and returned by the city tax commissioner, which act of equalization, in the judgment of the board, brought the value of the railroad properties thus assessed to a uniform standard of value with other property assessed for municipal purposes and exhausted their powers in the premises. Reduced to its narrowest limits, the question presented for consideration by the pleadings and in briefs of counsel is in respect of the method of procedure by the tax commissioner and the city council in the assessment of railroad properties situated in part in such municipality and subject to municipal taxes, and also, whether the statute providing for the

assessment of railroad property as a unit and distributing the aggregate value to the different counties, townships, cities and towns through which the lines run, on a mileage basis, is in harmony with the fundamental law. The validity of such legislation is especially called in question when applied to the taxation of railroad property in the city of Omaha for municipal purposes.

The legal questions presented, says counsel for relator, are: First, have the respondents correctly interpreted the statutes? Second, are the statutes in question valid?

The answer to the first question must, we think, be in the affirmative. The old revenue act under which the assessment in question was made provided for the assessment of railroad property of the character under consideration by one assessing body, viz., the state board of equalization, for all purposes of taxation—state, county township, school district and municipal. This assessing body, the statute declares, shall value and assess the property of railroad corporations at its actual value for each mile of said road or line, the value of each mile to be determined by dividing the *sum of the whole valuation* by the number of miles of such road or line. It is further provided that, after the valuation and assessment is made as aforesaid, the state auditor shall certify to the county clerks of the several counties in which the properties of such corporations are situated, or any part thereof, the assessment per mile so made on the property of such corporations, specifying the number of miles and the amount in each of said counties. Section 40, article I, chapter 77, Compiled Statutes, 1901. By section 98, chapter 12a, Compiled Statutes, 1903 (Annotated Statutes, 7547), the same being the charter act of cities of the metropolitan class to which the city of Omaha belongs, it is provided: "The tax commissioner shall take the valuation and assessment of railroad property within the city limits from the returns made by the state board of equalization to the county clerk." Assuming, as we do for present purposes, that the legislature may rightfully provide for

the assessment of the property of a railway company by
one assessing body, and as one property or as a unit, and
apportion the value thereof on a mileage basis, then, as we
view the subject, it is not only manifest that the legislature
intended but that it is quite appropriate that the disributive share belonging to any one taxing district should
be taken and accepted as the assessable value of that part
of the whole property which is situated in such district
and which shall be subject to taxes as all other property
therein. There appears to be no fundamental objection to
such an assessment. The assessment thus made and returned would, doubtless, be subject to the authority and
power of a board of equalization to raise or lower the value
so as to comply with the rule of uniformity and conform
to values generally obtaining in such taxing district. In
all schemes of taxation there are generally recognized elements of inequality and the probability of erroneous valuations in the assessment of property by whatever mode the
assessment may be made. The evil is usually remedied
by the exercise of the authority of a board created for that
purpose, whereby the assessment of different properties
is brought to a common standard of value. Different
precincts have different assessing officers, and these different officers, we know by common experience, widely
differ in their valuation of property of approximately the
same value. This difference of opinion and judgment
necessitates the establishment of a tribunal having authority and jurisdiction to equalize values and bring all
property to a common standard of valuation, to the end
that each item and class may bear its just and equitable
share of the burdens of taxation. A question somewhat
akin to the one under consideration was raised in *State
v. Aitkin,* 62 Neb. 428, and the propriety of assessments
of railroad properties by the state board of equalization,
and the acceptance of the valuation thus ascertained for
purposes of municipal taxation, was recognized and sanctioned. In upholding a law providing for such method of
assessing railroad property situated in a municipality

for municipal purposes, the court, among other things, in the opinion, say:

"The legislature in its wisdom has decided that the value of railroad property can be more accurately and justly estimated by the state board of equalization than by local assessors, and has exercised its constitutional prerogative by providing that railroad property shall be assessed in that manner. Whether or not it is reasonable to suppose that the state board of equalization would have more knowledge and a better opportunity to make a just valuation of such property than local assessors is quite unnecessary to be determined in deciding upon respondent's right to act as tax commissioner. Why may not several valuers constitutionally act upon different kinds of property, or upon the same property, for the purpose of different taxes? The real objection to this act on the ground of uniformity is, evidently, the idea that value is not such a fixed quantity that it is possible for two independent appraisers to agree. If values are fixed for purposes of municipal taxation by one body of assessors, and for county and state by another, it is practically certain that the two will disagree. Enough is said above to indicate an opinion that the only uniformity required as to any tax is that it should be uniform throughout the jurisdiction, that is, that state taxes shall be uniform throughout the state, county taxes throughout the county, and city taxes throughout the city." The result produced by this method of assessment is only that there are different assessing authorities for different kinds of property, each exercising an independent judgment in arriving at the value of the property assessed, and making due return thereof to the proper authorities. The inequalities in values thus returned, if any there be, is a proper subject for consideration by a body or tribunal authorized to discharge the functions of a board of equalization. If it be proper to assess railroad property as a unit and distribute the total value thereof on a mileage basis, it is obvious that the distributive share going to any one taxing

district may be required to be taken as the assessable
value and as the basis of valuation for equalization and
taxing purposes. The value of such distributive share
of the whole property may, it would seem, be raised or
lowered by an equalizing board in order that it may be
brought to a common standard and conform to the values
placed on all other property. This, as we understand the
record, is what was done by the respondents in the case
at bar, and if so is, we think, in harmony with legislative
intendment. It is the business of such boards, say this
court in *State v. Fleming,* 70 Neb. 523, "To fairly and
impartially equalize the valuation of all personal property
assessed in their respective jurisdictions and raise or lower
the same as the justice and equity of the case may require.
Whatever directions the law may give to the assessor in
valuing the property in the first instance, and whatever
result these directions may produce in the assessment of
franchises or other property of the taxpayer, the work
of the board of equalization is to equalize the valuations
made, so that every one, as nearly as that may be attained,
shall stand upon an equal footing, and pay an equal pro-
portion of the tax laid, according to the real value of his
property.  *  *  *  In this way, equality is attained and
every interest protected." It is manifest that the legis-
lative plan for the assessment of railroad property situated
in a municipality, for municipal purposes, has been fol-
lowed by the city authorities in the case at bar, and that
the interpretation given to these several provisions of the
statute by the respondents as to their authority and power
is in harmony with the expressed will of the legislature.

The very able and helpful arguments and briefs of
counsel on both sides of the controversy are devoted almost
exclusively to the second question presented, that is, the
alleged invalidity of the statutes providing for the assess-
ment of the property of a railroad company as a unit, and
the distribution of the value of the whole on a mileage
basis by one assessing body for all purposes of taxation,
and it is to this phase of the case that we have given the

fullest consideration and most thorough research at our command. It is the contention of counsel for relators that the provisions of the fundamental law governing taxation are violated in the assessment of railroad property for municipal purposes by the plan adopted and prescribed by the legislature. It is argued that railroad properties of great value located within the corporate limits of the city of Omaha pay taxes on but an insignificant part of the true value; that these properties escape a large share of municipal taxes for which they should be justly burdened and made to contribute to the revenues of the city in return for the protection received in the administration of the affairs of the municipality in which they are situated. Counsel says that here are located costly depots and terminal facilities, including real estate of vast value occupied for such purposes, which ought to respond to municipal taxation according to such values to be ascertained with reference to the actual location of such properties as if separate and independent properties, and without regard to their relation to and connection with the entire lines of railway of which they form a part. The right and power of the legislature to provide a scheme of taxation for municipal purposes by an assessment of railway property as an entirety, and the distribution of the aggregate value on a mileage basis, is boldly challenged, and we are asked to so construe the constitutional provisions relating to the subject as inhibiting such a plan and method of taxation of such properties for municipal purposes. Our complaint, says counsel, is not that the legislature has provided a different method for assessing railroad property from that provided for assessing other property, but rather that, under the statutes relied upon by respondents, a result is obtained which violates the constitutional requirement of uniformity. If, it is said, the legislature had provided for assessing the property of railroads extending into more than one county by determining the value of the railroad as a whole, and then apportioning such value to the several tax districts in pro-

portion to the real values in the several districts, rather than in proportion to the number of miles of main line, such a method would at least be theoretically correct; but that, when the apportionment of the total value is according to the number of miles of main line in any one taxing district, there is an ignoring of the question of value altogether. The mandate of the constitution, it is insisted, is imperative that in every taxing district every owner shall pay a tax in proportion to the value of the property in the district and not the extent of it. The constitutional provisions principally relied on by relators in support of their contention are found in section 1, article IX of the constitution, which declares that revenues are to be raised by levying a tax by valuation so that every taxpayer shall pay in the proportion to the value of his, her or its property subject to taxation, the value to be ascertained in such manner as the legislature shall direct. The necessity for uniformity and equality in taxation is emphatically expressed in *State v. Osborn*, 60 Neb. 415, wherein it is said:

"And this rule of uniformity applies not only to the rate of taxation but as well to the valuation of property for the purpose of raising revenue. The constitution forbids any discrimination whatever among taxpayers, thus, if the property of one citizen is valued for taxation at one-fourth its value, others within the taxing district have the right to demand that their property be assessed on the same basis. The rule of uniformity is satisfied if observed by each jurisdiction imposing the tax." To the same effect is *High School District v. Lancaster County*, 60 Neb. 147. See also *State v. Poynter*, 59 Neb. 417, and *State v. Karr*, 64 Neb. 514.

By section 6, of article IX of the constitution, it is provided that for corporate purposes all municipal corporations may be vested with authority to assess and collect taxes, but such taxes shall be uniform with respect to person and property within the jurisdiction of the body imposing the same. The requirements of uniformity in

the assessment of property for municipal purposes generally is doubtless the same, and as obligatory under the provisions of section 6, article IX, as that required by the provisions of section 1 of the same article, and it is so held in *State v. Savage*, 65 Neb. 714. The construction given to the first section in the several decisions of this court which we have cited apply with equal pertinency and force to those of section 6. Uniformity with respect to person and property requires that the tax rate must be the same as to all persons affected, and the valuation of the property must be upon the same basis throughout the entire taxing jurisdiction. A departure either as to rate of levy or as to the standard of valuation of the different properties subject to taxation would violate the rule of uniformity demanded by the constitution, and render ineffectual legislation authorizing such a method of procedure in the levying and collection of municipal taxes. It is equally clear that, if property within a municipality having a fixed legal situs therein, was by a scheme or plan of assessment to escape in whole or part municipal taxes upon a valuation in substantial conformity with all other property within the taxing district, this would be a violation of the provisions of said section 6. May the legislature, without infringing on these provisions of the fundamental law, provide for the assessment of the property of railway companies such as is required to be included in the schedules to be returned to the state assessing board upon the unit plan or system, and distribute the value of the whole property along the line of the road thus assessed, and to the different tax districts on a mileage basis? It is earnestly contended by the relators that the several railroad companies having lines in the city of Omaha have valuable terminal facilities, depots and other properties on their right of way and side tracks which have a fixed and actual physical situs, and as such are subject to local taxation upon such values, and that by the distribution of the total value of any one road over the entire line on a mileage basis is to withdraw from

taxation for municipal purposes property situated within the municipality, thereby resulting in a violation of the provisions of the constitution that all property shall bear its just share of tax burdens of the taxing jurisdiction in which it is situated. In a sense, it is no doubt true, that the properties of the large railway corporations doing business in this state, with extensive terminal facilities, switching yards, depot grounds and costly structures in the large cities and towns, are much more valuable mile for mile than a corresponding length of the roadbed and right of way situated outside of such municipalities, consisting usually of but a single track and roadbed and the right of way of from 100 to 200 feet in width. In a legal sense, however, must it be said that the property thus situated is so localized that its situs for the purpose of taxation must be the same as where physically situated, and that any attempt to throw it with the whole mass of property with which it is connected, and of which it forms a part, and assess it as an entirety, and distribute the value on a mileage basis, contravenes the fundamental law?

We may assume that all the lines of railway in this state have been by the state board of equalization assessed at a valuation uniform with the values placed on all other property assessed for revenue purposes, and that the total value of each of such lines of railway has been distributed to the different counties, townships, school and road districts, cities and towns through which such lines extend according to the length of the line in each division for whose benefit taxes are levied. If those portions of the road lying in the city of Omaha are to be valued at a larger sum per mile than other portions of the same line, then it follows that there must be a corresponding reduction of the amount apportioned to the remainder of the line or else an overvaluation and double taxation would be the result, and this would violate the rule of uniformity the same as does undervaluation. The legislative plan contemplates a full valuation of all property of a railway line subject to taxation in this state, and the distribution

of that value equally over each mile of the line, and with equal benefit to every taxing district through which it extends. The relators contend for a method of taxation that recognizes differences of value of different parts of the same line, a localization of such property for taxation and an apportionment of values accordingly, as necessary to meet the demands of the constitutional requirement of uniformity. It is not for us to say that the method adopted by the legislature is the most approved and comes nearest reaching an ideal state in the levying and collection of the public revenues. Yet, it is quite true that this plan has been warmly commended by courts of last resort of many of the states and of the United States as best calculated to more nearly approach perfect uniformity than any other plan that has heretofore been devised. It may be, and possibly is, true that legislative provisions might be enacted in the interest of more just and equitable taxation that would allow some latitude on the part of an assessing body clothed with the power to value and assess railway property to vary the value of different parts of a railway line in the distribution of the value of the whole to conform to the improvements made and character of the property assessed in the different localities through which the right of way and roadbed extends. It is, however, for us to determine only, as best we may, whether the plan of valuing and assessing railway property as adopted by the legislature is in conflict with fundamental law. The courts have generally recognized that upon legal principles, and as a practical question, the properties of a railroad company, because of their peculiar character, can best be assessed by one assessing body, and cannot with any degree of satisfaction be left with local assessing officers. The wisdom and necessity for a taxing body having authority and jurisdiction over the territory covered by all the property of a railroad company, and with power to assess the whole of such property and to fix values which would be uniform over the different lines of railroads to be assessed, seem so apparent that argument can scarcely

add anything. At least the wisdom and experience of those having to do with the subject of taxation have in very many of the states of the Union brought about plans for the assessment of properties of this character by one assessing body, and this method is now quite generally resorted to as the best solution of a difficult problem of railroad taxation. As to those properties which have no fixed situs, such as the rolling stock, franchises and other intangible property, it is difficult to conceive of any more just or equitable scheme or plan than to find the value of the whole and distribute the same throughout the different taxing jurisdictions according to the distance of the line of road situated in each district for whose benefit taxes are levied. In a measure, this same principle, it is manifest, obtains in respect of the line of a railroad, including all properties necessary and used in its operation in the accomplishment of the objects of its incorporation. Carried to its logical conclusion, the contention of the relators would require the assessment of every fractional part of a railroad within any taxing district as separate and independent property, the aggregate of these several values representing the value of the entire property within the state. No two miles of a railway system, if regard be had solely to the real estate composing the roadbed and right of way, the cost of construction, and the value of the superstructures and buildings thereon necessary for the operation of the road, would be exactly the same. Each taxing district would have located therein property of a value peculiar to itself and to no other, and, if the rule of uniformity be observed, an assessment must be made of such property according to its value as thus localized. Must all railway property be thus localized for purposes of taxation? The assessment of the property, which is the subject of the present controversy and the validity of which is challenged, was made by the state board of equalization under the old revenue act. Compiled Statutes, 1901, chapter 77, article I. The provisions assailed are found in sections 39 and 40 of the act. The provisions of

the new revenue act, sections 85-87, article I, chapter 77, Compiled Statutes, 1903 (Annotated Statutes, 10484-10486), in regard to the questions herein being considered are believed to be in all material respects the same as the provisions of the old law. By section 39, article I, chapter 77, it is made the duty of certain officers of every railroad company doing business in this state and having property therein subject to taxation to file schedules under oath of the property of such company with the state auditor, at a time as therein stated. The schedule is required to disclose the number of miles of such railroad in each organized county, and the total number of miles in the state, including the roadbed, right of way, superstructures thereon, main and side tracks, depot buildings and depot grounds, section and tool houses, rolling stock and personal property necessary for the construction, repairs or successful operation of such railroad lines. "Provided, however," says the statute, "That all machine and repair shops, general office buildings, store houses, and also all real and personal property, outside of said right of way and depot grounds as aforesaid, of and belonging to any such railroad and telegraph companies, shall be listed for purposes of taxation by the principal officers or agents of such companies, with the precinct assessors of any precinct of the county where such real or personal property may be situated, in the manner provided by law for the listing and valuation of real and personal property." By the succeeding section, authority is given to the state board of equalization to value and assess all property required to be listed and returned to the auditor of public accounts at its actual value for each mile of said road or line, the value of each mile to be determined by dividing the sum of the whole valuation by the number of miles of such road or line. It is also made the duty of the auditor to certify to the county clerks of the several counties in which the property of the corporation or any part thereof may be situated the assessment per mile so made on the property of such corporation, specifying the number of miles

and amount in each of such counties. The value of the whole, when ascertained, is by this method apportioned to the several counties, townships, cities and villages and other subdivisions through which such railway line extends, according to the number of miles of railroad situated in such subdivision. It is further declared that all such property shall for the purpose of taxation be deemed "personal property" and placed on the tax lists as thereinafter provided. It will be observed that in the assessment of railroad property under this statute no property located off the right of way is assessed by the state board, and that there are certain exceptions as to property specified which is situated on the right of way. It is only the lines of railways, including superstructures, appurtenances and property on the right of way necessary to the successful operation of the road, and the rolling stock and franchises that are required to be assessed by the state board as a unit. In *Adams County v. Kansas City & O. R. Co.*, 71 Neb. 549, this court had occasion to construe the language of the proviso found in section 39, and it is there held that the phrase, "outside of said right of way," etc., qualifies only the word property immediately preceding it and not the specific terms used in the enumeration of other property therein. Accepting this as a correct construction, as we do, and keeping in view the entire act relating to the subject, it becomes obvious that the legislative intendment was to enlarge the situs of the property of a railway company necessary for and used in the construction of its lines and the prosecution of its business so as to cover the entire line of its roadbed and right of way. All of this property is so intimately related to each of the different parts, and so connected together, that it is, it seems, appropriate and legal to so treat and regard it when fixing its value for assessment purposes and apportioning the value to the different tax districts through which the road extends. A clear understanding of the character of the property of a railway company, which the statute requires to be valued and assessed as

a unit, and the value distributed on a mileage basis, is
necessary to an intelligent understanding and application
to the principles underlying the taxation of this species
of property, and of the decisions of the courts of other
states relating to the subject. The supreme court of Ten-
nessee in the cases of *City of Chattanooga v. Nashville, C.
& St. L. R. Co.,* 7 Lea (Tenn.), 561, and *Franklin County v.
Nashville, C. & St. L. R. Co.,* 12 Lea (Tenn.), 521, by its
opinions therein comes nearest supporting the contention
of counsel for relators, and yet these cases are, we think,
clearly distinguishable and are not authority of a decisive
character in the determination of the questions as pre-
sented in the case at bar. In the first case cited, all the
property of whatever description and wherever situated
was for the purpose of taxation, under the statute being
considered, to be thrown together as a unit or as one prop-
erty valued as a whole and the value distributed on a mile-
age basis. In the latter decision of that court, judicial
sanction is given to the validity of an assessing statute
very similar to the one under consideration except that it
was held that depots have a local situs and should be
assessed accordingly. But the reasoning by which this
conclusion is reached, as counsel well says, is somewhat be-
wildering. In a discussion of the character of railroad
property required to be assessed by the state board of
equalization and the reasons for legislation providing for
the assessment of such property as a unit, the total value
thereof to be distributed on a mileage basis, this court has
expressed itself in *Chicago, B. & Q. R. Co. v. Richardson
County,* 61 Neb. 519, as follows:

"The common sense view of the subject would seem to be
that such purpose was to enable the proper authorities to
distribute the avails of such taxation equitably among all
the municipal subdivisions through which a road may pass,
in the ratio which the number of miles within each sub-
division bears to the total number of miles of road within
the state, treating each mile as equal in value to every
other mile, and regardless of whence came the power under

which any particular portion of the road is constructed. A railroad might have vast terminals at one point, worth as much as the remainder of the line, though it extended through a dozen counties. The subdivision in which these terminals are located is not, under this law, permitted to reap an advantage over other localities, by reason of the mere accident of location; but must share its advantages with these others pro rata. That evidently is the reason behind and under this legislation. How a franchise has been acquired, or whether a particular portion of a line is more expensive to construct than others, is unimportant in determining whether the property should be taxed locally or otherwise. As a matter of fact, this inequality of value was the principal motive for the legislation, which sought to obviate the evils attendant upon such a state of facts. Without such inequality, no legislation would have been necessary, the general laws being in that event adequate for the purpose."

While the constitutionality of the statute was not directly involved, the discussion of the subject is valuable as showing the reasons for treating and assessing railroad property as a unit, and the difficulty of separating it into fractional parts, each piece for the purpose of assessment to be localized and treated as a specific item of property having a value independent of the other portions of the whole. In 1 Cooley, Taxation (3d ed.), p. 693, it is observed by the eminent author: ·

" 'The property of railroad and canal companies constitutes a legitimate class of property for the purposes of taxation—a class which, in order to treat it fairly in the matter of taxation, must be treated separately.' Indeed the difficulties of assessing, in the same way that property in general is assessed, lines of railroad extending through many municipalities are so great and so obvious that in many states it is not attempted, and a franchise tax is imposed as a substitute for all other taxation. But in other states a railroad is listed, assessed and valued as an entirety, and the value is then apportioned for taxation

among the several municipalities by some standard pre-scribed by law, which generally is the length of line within the municipalities respectively. There is no constitutional objection to that method of taxing this species of property, and it is perhaps more just than any other."

The supreme court of .Colorado in the case of *Ames v. People*, 26 Colo. 83, 56 Pac. 656, in passing upon a con-troversy identical in principle with one in the case at bar, uphold the validity of statutory enactments providing for one body to value and assess all the property of a railway company as a unit and to distribute the value upon a mileage basis. The constitutional provisions as to uni-formity in that state, while not the same, are substantially so in principle, and the necessity for equality of taxation is recognized in the decision rendered. In the opinion, it is said:

"In the method of laying a tax, either as to the assess-ment or the apportionment, the general assembly is not restricted by the constitution, and unless the legislation is palpably unjust, oppressive or inadequate, courts will not substitute their judgment for that of the legislature. Many tribunals of final resort, including the supreme court of the United States and our own court, as will be seen from the cases already cited, have held that the method of ascer-taining and distributing values of railroad property like that prescribed in the statute under consideration, if not the only rational one, is, at least, the best and fairest thus far invented." And further on in the same opinion, the court treat the subject in the following manner: "It fol-lows that, in order to secure a just valuation for taxation of this class of property, all of it that is used for the con-venient and proper operation of the railway may be as-sessed as a unit, and the valuation thus ascertained may be apportioned to the various taxing districts upon a mileage basis. Indeed, construing, as we should, sections 3 and 10 together such of the property of a railroad company, real and personal, as is used for the convenient and proper operation of its railway can properly only be assessed and

apportioned for taxation as a unit; and the apportionment upon a mileage basis, as this act prescribes, will come as near to doing exact justice as it is possible to do. * * * This method of apportionment, in our judgment, gives to each local taxing district its just proportion of tax, that is to say, each taxing district gets for purposes of taxation the just valuation of the property physically situate within its territorial limits; for the value of property situate therein cannot be made to depend upon its so-called natural situs, entirely disassociated from the use made of it, but that value, in great measure, depends upon its connection with every other part of the corporation property so used, and situate in every other taxing district in which any part of its railroad lines, considered always in connection with the character of the use made of it. Thus the command of the constitution is obeyed, and, in fact, to each taxing district is given a fair valuation of the railroad property within its territorial limits, and that is all the section requires."

Say the supreme court of Michigan: "The propriety of treating aggregations of property as a unit is as natural and proper for the purposes of assessment as for sale, and this is especially so where the various articles are so essential to the purpose for which they are combined that the withdrawal of one or any class would destroy, or substantially impair, the use of all for the purposes to which in their new form they are adapted." *Detroit Citizens Street R. Co. v. Common Council,* 125 Mich. 673.

In *People v. State Board of Equalization,* 205 Ill. 296, it is said: "The right of way of a railroad company cannot be cut up, for the purposes of assessment, into parts, either by dividing it into sections by the lines of the different taxing bodies which it crosses, or by severing from its main track the portions that lie outside of some arbitrary line drawn through the center of the right of way. A railroad is a unit, and for the purposes of assessment its right of way must be treated as a whole. The switch or side track at which it receives coal, grain, stock or freight in a

country village is as essential to the successful operation of the road as is the switch or side track in the city at which the articles which it handles as a common carrier are discharged, and the land upon which its side or second track and turnouts, and its station, machine shops, round-houses, etc., stand, is as necessary to the successful operation of the road and as much a part of its right of way as the land upon which its main track is laid, and the value of each piece of its right of way must be determined by taking into consideration the value of the entire right of way, rather than the value of each piece for commercial purposes wholly disconnected from the use to which it has been applied, as compared with contiguous property used for purposes other than right of way."

Many other authorities could be cited, but the foregoing give a very accurate idea of the trend of judicial opinions regarding the propriety and legality of this method of assessing the property of railway companies. The principle justifying the assessment of railroad properties as a unit, and distributing the value on a mileage basis to the different tax districts through which the railway line or track extends, seems to be that in fact and in legal contemplation for the purpose of assessment, use and sale such property may rightfully be regarded as a physical whole or one entire property extending over the whole line of the railway, the value of which depends not on any separate or fractional part, but upon the whole of the property as an entirety.

The fundamental idea underlying the relators' contention as to the proper method of local taxation of these properties is that the fractional parts of the different railway companies located in the city of Omaha, consisting of the depot grounds, main track and side tracks, and the structures thereon, have a fixed and natural situs, and that they are of themselves of especial value greatly in excess of other portions of equal length of the lines of which they are parts, and that such values are separable from the remainder, and, therefore, to meet the requirements of the

constitution as to uniformity and to the end that all property shall bear its just proportion of the burdens of taxation in the district where it is situated, these properties should be localized in the taxing district in which they are physically situated, and assessed upon their separate values for municipal purposes. Of course, if we assume that such properties have a legal situs and an ascertainable value of themselves within the limits of the municipality, separate and apart from the remainder of the line, and are possessed of a greatly enhanced value over other portions of the main track of equal extent, the contention of relators is conceded and there is left no room for discussion or argument.

The principle underlying the legislation complained of undoubtedly is that every portion of the property of a railway company going to make up the whole is interdependent, and that the situs must be determined with respect to the entire property and not any fractional portion of it. The legislature has fixed, or undertaken to fix, the legal situs of a railroad where the organic structure is, in all the counties and subordinate districts through which the road is constructed, and has provided for the apportionment of a share of the total value to each taxing district in proportion to the length of the main track in such district, upon which taxes are to be levied for all purposes. It is the fractional proportion of the whole distributed to any one taxing district that represents the taxable property of such railroad line in such district, rather than the physical property found therein. This method does not effectuate a moving about of property having a fixed place of location—a change of situs—but amounts only to the valuing of the whole as a unit, and the distribution of the total value along the line and throughout the extent of the physical property, on what is regarded as a fair, just and equitable basis. The nature and characteristics of the property are such as to render it incapable of division into fragmentary parts and the valuing of each of such parts for assessment purposes as though it were a separate and

distinct item of property having a location in a particular taxing jurisdiction. These properties have no market value when considered in fractional parts. Railroad properties are bought and sold as an entirety. The real estate on which the right of way is located cannot be valued in a commercial sense as so many acres, or as lots and blocks, since its value in such cases is determined, in a large measure, by reason of the use to which it is put and the improvements thereon, and then only in connection with the other property of which it forms a part. The legislature has declared that the property of railroad companies required to be valued and assessed by the state board of equalization should, for the purposes of levying and collecting taxes, be regarded as personal property. If this legislative declaration is to be given force, then the right to enact and the validity of the enactment providing for a distributive valuation on a mileage basis would necessarily follow. There will, we apprehend, be no serious contention against the power of the legislature to, by rule of law, fix the situs of all such property (if it may be regarded as personalty) for purposes of taxation. In *Missouri, K. & T. R. Co. v. Board of Commissioners*, 9 Kan. App. 545, 59 Pac. 383, the Kansas court of appeals say:

"Under section 6873, General Statutes of 1889, * * * all property used or held by a railway company for the purpose of operating its railroad, including its roadbed, right of way, etc., is to be appraised and assessed as personal property. The statute declaring such property personal property for the purposes of assessing a tax against it, it follows that such tax must be collected as a tax upon personal property. * * * The legislature had the power to enact the statute declaring the right of way, roadbed and other property held or used in the operation of the railroad to be personal property for the purposes of taxation."

In *Ames v. People*, 26 Colo. 83, the court say:

"The whole argument, however, is based upon the proposition that the property is assessed not where it is physi-

cally situated, but all along the main track, each municipal corporation being given for taxation a value dependent not upon the actual value of the property therein physically located, but only such value of the entire property of the corporation as the length of the main track in the municipality bears to the total length of the line. This method of distribution is said to be contrary to the rule that property must be taxed at its actual *situs*. But it is settled by a long line of decisions that this rule is merely the law of the state that recognizes it; hence being a matter of legislation it is entirely competent for the legislature, unless restrained by the constitution, to fix for the purposes of taxation the *situs* of both real and personal property."

The Arkansas supreme court regarding a similar question states the principle as follows:

"The nature of the property justifies classification and separation from the body of the real estate upon the grounds that justify the separate classification of realty and personalty. The requirement of an annual assessment of railways affords, therefore, no greater cause for complaint than does the like requirement for personal property, and the complaint of discrimination is groundless." *St. Louis, I. M. & S. R. Co. v. Worthen*, 52 Ark. 529, 13 S. W. 254.

The supreme court of the United States in *Columbus S. R. Co. v. Wright*, 151 U. S. 470, 480, has said:

"The roadway itself of a railroad depends for its value upon the traffic of the company, and not merely upon the narrow strip of land appropriated for the use of the road, and the bars and cross-ties thereon. The value of the roadway at any given time is not the original cost, nor, *a fortiori*, its ultimate cost after years of expenditure in repairs and improvements. On the other hand, its value cannot be determined by ascertaining the value of the land included in the roadway assessed at the market price of adjacent lands, and adding the value of the cross-ties, rails and spikes. The value of land depends largely upon the use to which it can be put, and the character of the im-

State v. Back.

provements upon .it.  The assessable value, for taxation, of a railroad track can only be determined by looking at the elements on which the financial condition of the company depends, its traffic, as evidenced by the rolling stock and gross earnings in connection with its capital stock.  No local estimate of the fraction in one county of a railroad track running through several counties can be based upon sufficient data to make it at all reliable unless, indeed, the local assessors are furnished with the means of estimating the whole road."

Again it is said by the supreme court of Wisconsin, in *State v. Anderson,* 90 Wis. 550:

"The utter impracticability, not to say impossibility, of treating it as real estate for the purposes of taxation, is illustrated, not only from the results that might follow tax sales, but in attempting to assess it as such under the provision that 'all real property not expressly exempt from taxation shall be entered upon the assessment roll in the assessment district where it lies' (R. S. sec. 1039), and is well illustrated by the present case, where the property claimed to be real estate has a physical location in twenty-one assessment districts.  How could it be entered on the rolls by lots and blocks, or by reference to plat or deed, or how otherwise, under secs. 1045 and 1046?  It is part on and part in the soil, and part in the air.  How are the twenty-one assessors to assess and value the tracts, ties, poles, trolley wires, etc., with certainty and in an intelligible manner in so many parcels?  And are the twenty-one assessments to be followed by as many separate taxes and tax sales in case of nonpayment?  It seems to us entirely clear that this property cannot be regarded as real estate for the purposes of taxation, and that it is not the 'land' and 'real property' described in these sections for assessment and taxation; and as already stated, it seems perfectly plain from the statute (secs. 1034, 1038, R. S.; ch. 285, laws of 1889), that this property is required by law to be assessed and taxed.  *   *   *  In view of the use made of the specific lots upon which the power houses

are situated, and upon a fair construction of the statute, and with a view to carry out its evident meaning, we hold that such real estate, thus devoted to such uses, is not the real property required by section 1039 to be 'entered upon the assessment roll in the assessment district where it lies'; it having acquired a peculiar character in the law by reason of having become a part of the entirety of a property subject only to assessment and taxation as an entirety, in the assessment district where the corporation owning it has its principal office and place of business."

We are satisfied upon principle and authorities cited that the legislature has not exceeded its powers in providing, as it has done, for the assessment of the property of a railway company as a unit, and the distribution of the value thus ascertained over the entire line of the railway assessed, and to the different tax districts and municipalities into which the roadbed or right of way extends on a mileage basis; that when the values are thus ascertained and apportioned and the distributive share assigned to any one district or municipality, such proportionate share legally represents the value of the fractional part of the entire property situated in such district or municipality for the purposes of municipal taxation, and that the fundamental law as to uniformity is not violated by such a scheme of assessment and distribution of values of the entire property.

It is also contended that the sections of the statute providing for an assessment of railway property by the state board of equalization is void because of the alleged deprivation of property by taxation without due process of law, in that no sufficient notice is given of the meeting of the state board of equalization when assessing such property. This question has been under consideration for some time and is disposed of in an opinion in the case of *Chicago, B. & Q. R. Co. v. Richardson County, post,* p. 482. On the authority of that decision these sections in respect of the objection urged against them of which we have just made mention must be held valid. The constitutionality of these

sections is also upheld in that opinion as to other objections herein discussed.

The application for a peremptory writ of mandamus should be denied, which is accordingly done.

WRIT DENIED.