PROVOSTY, J.
Act 97, p. 107, of 1890 creates the Atchafalaya Basin levee district, and authorizes the board of commissioners of the district to “levy annually a local assessment or forced contribution of * * * $60 per mile of railroad lines within said district, which shall be placed upon the assessment rolls of the respective parishes * * * of said district, and shall be collected in the same manner” as the state and parish taxes.
For the year 1915 the said board levied ‘a *771 local assessment or forced contribution of * * * $60 per mile of railroad lines within said district,” and directed the assessors of the several parishes within the district “to extend said contribution on the assessment rolls of 1915.”
Article 226 of the Constitution provides that “there shall be a state board of appraisers composed of * * * whose duty it shall be to assess the property belonging to” railroad corporations.
For carrying this article into effect the Legislature passed Acts 106, p. 153, of 1S98, 122, p. 189, of 1900, and 70, p. 184, of 1904. These provide that the said board of appraisers “shall make a true and correct assessment and valuation of all property belonging to” railroads and “shall make due return to the different parochial authorities of the property assessed,” and that the assessment thus made “shall be final unless changed or reduced by suit for reduction, to be brought on or before the first Monday of November of the year in which the assessment is made, in the court * * * of the parish in which the state capital may be situated.” Said acts authorize said board to summon witnesses and send for books and papers, and otherwise invest it with full authority for procuring all the information that may be necessary for' making a full and complete assessment and valuation of all the railroad property in the state.
The said board of appraisers made due returns to the assessor of the parish of Assumption, (which is situated within said levee district) of the assessment and valuation made by it of the property of the Plaintiff railroad company. This return showed 14.86 miles of “main track” and 6.9 miles of “side track.” The assessor “placed” or “extended” this on his tax roll as 21.77 miles of railroad line.
The present suit is brought to test the question whether the expression “railroad lines,” used in the said act of 1890 authorizing the levy of a local contribution “per mile of railroad lines,” and the expression “per mile of railroad line,” used in said resolution of the board of commissioners of said levee district levying said local contribution, included within their meaning the side tracks of the railroad, or only the main line — i. e., the one from terminus to terminus.
[1] Defendant excepted to the suit on the ground that the plaintiff company had not furnished the parish assessor with a list of its property, as is required by section 14 of Act 170, p. 346, of 1898, and is therefore es-topped from contesting the correctness of the assessment.
Said section requires said tax list to be furnished to “the assessor.” Evidently this means the assessor by whom the assessment is to be made. This assessor in the case of railroad property is the state board of appraisers ; and the plaintiff company furnished to said board the list thus required.
[2] Plaintiff company is sought to be es-topped on the further ground that its assessments for the years 1908-1914, inclusive, were exactly the same as for 1915, and that it paid the tax in those years without demur.
A sufficient answer to this is that, if this tax was improperly assessed in those years, the fact that the plaintiff company paid it might be good ground for the levee board to return the amount thus paid when not due, but could not possibly be good ground for continuing to pay it.
[3] Defendant excepted on the further ground that section 2 of Act 63, p. 96, of 1906 requires suits contesting assessments to be filed “on or before the first day of November of the year in which the assessment is made,” and that therefore this suit should have been filed before November, 1915, whereas it was filed in July, 1916.
The said section provides for a contest before the police jury when that body sits as a *773 board of reviewers for passing on the correctness of the assessments made by tbe parish assessors; and the suit which it has reference to as having to be filed before November of the current year is the suit to test the correctness of the decision of this board of reviewers. The suit to test “such correctness,” it says, “shall be instituted on or before,” etc. No other “correctness” can possibly be meant here than that of the assess; ments which are reviewable and have been reviewed by the said board of reviewers. And, such being the case, the section cannot possibly have any application to assessments of railroad property made by the state board of appraisers, which are declared by the said Acts 106 of 1898, 122 of 1900, ana 70 of 1904, under authority of which they are made, to be “final,” and which therefore are not reviewable by the police jury sitting as a board of reviewers. The suit to change the assessment as made by the state board of appraisers must be brought on or before November of the current year; but the present suit is not of that character. The plaintiff company makes no complaint against the assessment as returned by that board; the complaint is against the manner in which the, parish assessor extended upon his roll the assessment thus returned.
[4] Objection is also made that the plaintiff company when tendering the amount of taxes which it admitted to be due — that is to say, the amount of its assessed taxes less the amount now in contest — demanded of the tax collector a receipt in full. The only evidence on that point is the following:
“It is admitted that the tender of the tax made by plaintiff to Edgard Aucoin, sheriff and ex officio collector in and for the parish of" Assumption, La., was $414.60 less than the amount shown to be due by the tax rolls of the parish of Assumption, La., for the year of 1915; that said amount tendered by it to said tax collector during the month of December, 1915, was tendered to him in full payment of all taxes due by plaintiff for the year 1915, and as such was refused by said tax collector, he claiming that he had no authority to accept it as offered.
“Amount tendered was in full of all taxes as shown by assessment roll, save and except amount charged assessed against side tracks, which we declined to pay as illegal.”
Nothing is here said of the plaintiff company having demanded a receipt in full. Whatever ambiguity might be found in that regard in the first paragraph of this admission is removed by the explanation given in the second paragraph.
[5] On the main question in the case, as to what is meant by railroad lines or line, we agree with the view expressed by our learned brother of the trial court as follows:
“It is the opinion of the court that both the assessor and the railroad have misconstrued the law. The contribution of $60 is imposed on each mile of railroad line. A railroad line, as I understand it, is made up of one or more main tracks, with necessary side tracks, switches, signal blocks, and such other appurtenances as may be necessary to the operation of the railroad.
“The $60 I understand to be imposed on each mile of railroad line, which includes the road bed, one or more main tracks, and such switch- , es and side tracks as may exist thereon. Side' tracks are necessary to the operation of a single-track railroad, in order that trains may pass, each other. They are necessary on every railroad for the placing of freight ears to be loaded or unloaded without interfering with the passage of trains on the main tracks.
“Of course, if a side track or spur leaves the main track and runs off to a considerable distance in order to get freight or passengers from a particular village or factory, it becomes an additional or branch line or railroad. There is no evidence to show the nature of either the main tracks or side tracks in this case. From the figures, 6.91 of side track as compared with only 14.86 of main track, it might be surmised-that the so-called side tracks leave the main track or tracks, and run off to such a distance as to become additional lines of railroad.”
[6] Only we would add that, in our opinion, a branch road operated as such, or even a traffic spur, if not private, but open to public use, would have to be considered to be a railroad line, within the meaning of said Act 97 of 1890.
On the point of whether any part of the-21.77 miles assessed to plaintiff company is of that character, the evidence is silent, as our learned brother says. Counsel for defendant contends that the burden was on *775 plaintiff company to show what the 6.91 miles of side tracks consisted of, as, in order to make out its case, it had to show that no part of this particular mileage was liable to assessment.
[7] We are not impressed hy that contention. The term “side track” has a popular dictionary meaning, in which it designates a track on the side of the main track for its more convenient operation; and the state board of appraisers must be taken to have intended to use the term in this popular sense. They unquestionably used it as contradistinguished from “main track,” and unquestionably also they intended that such switches or sidings as the plaintiff company had should be designated by it. Whether if in addition to the main track and these sidings the plaintiff company had other tracks, which were also intended to be designated by it, is the question. If the defendant desired that the said expression should be read in the light of the existence of such other tracks, the burden was on defendant to show their existence. In order to find that the term “side track,” as thus used, included tracks other than sidings, we should have to assume that such other tracks existed, and such an assumption would be purely gratuitous.
[8] When this suit was filed, the property of the plaintiff company had been advertised to be sold to satisfy the tax, and the sale was to take place on the next day. The plaintiff company did not ask for an injunction nor for a staying order of any kind, but merely asked that the tax collector be ordered to show cause why an injunction should not issue. The judge, however, in making his order to show cause, added to it the following:
“And in the meantime let him [the sheriff] be restrained from further advertisement of the said property for sale.”
.The defendant says that the said order operated practically as an injunction in preventing the sale, and that it was unauthorized, since the conditions prescribed by section 56 of Act 170, p. 346, of 1898, for obtaining an injunction in such cases had not been fulfilled, and that- therefore the said restraining order should be set aside. In that contention defendant is entirely correct, the restraining order should not have issued, and the judgment appealed from must be affirmed in so far as it sets this order aside.
[9] But the plaintiff company, upon payment to the defendant of the amount of local contributions admitted in its petition herein to be due, or else depositing same in court subject to the order of the defendant, is entitled to have the injunction prayed for issue.
The said section 56 of Act 170 of 1898 provides that, before an injunction can issue restraining the collection of a part of a tax as not being due, the part which is admitted to be due must be paid, and the receipt of the tax collector showing the payment must be produced, and that, in addition, a bond must be furnished to answer for the tax sought to be enjoined, together with interest, penalties, and costs, and 50 per cent, additional. However, as the case has now come to judgment, and therefore the plaintiff company cannot possibly be ever called upon to pay the said tax or any interese, penalties, etc., the giving of this bond cannot be necessary; and, as the defendant has refused to accept payment of the taxes due, the production of his receipt for same is not possible.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed in so far as it sets aside the stay order heretofore issued in this case, but that it is in all other respects set aside; and it is further ordered, adjudged, and decreed that upon the plaintiff company depositing in court the amount of the local contribution admitted by it to be due on the assessment *777 of its property for the year 1915, namely, on 14.86 miles at $60 per mile, subject to the order of the defendant, an injunction issue enjoining and forbidding the defendant from attempting to collect from the plaintiff company any part of the additional local contribution assessed against said plaintiff company on the assessment roll of 1915, and that the defendant pay the costs of this suit.
MONROE, O. J., takes no part