(No. 5795. December 11, 1931.)

THE CITY OF POCATELLO and T. C. COFFIN, Plaintiffs, v. C. BEN ROSS, Governor of the State of Idaho, F. E. LUKENS, Secretary of State of Idaho, FRED J. BABCOCK, Attorney General of Idaho, GEORGE C. BARRETT, State Treasurer of Idaho, and E. G. GALLET, State Auditor of Idaho, as the Board of Equalization of the State of Idaho, Defendants.

[6 Pac. (2d) 481.]

Peterson & Clark and Edwin Snow, for Plaintiffs.

Fred J. Babcock, Attorney General, and Z. Reed Millar and Maurice H. Greene, Assistant Attorneys General, for Defendant.

H. B. Thompson, *Amicus Curiae.*

LEE, C. J.—In 1931, the State Board of Equalization, after determining the full cash value of the intrastate lines of the Oregon Short Line Railroad Company to be $56,882,646 proceeded to apportion that value to the several taxing units through which the said lines ran. To the City of Pocatello, was apportioned a value of $189,886. In arriving at this

figure, the board had divided the assessed value of each main line, second track and branch line by the number of miles of each and multiplied the line mileage of each main line, second track and branch line within the limits of Pocatello by the quotients. The length of line determined in each instance excluded all side-tracks and spurs amounting in the aggregate to 546.9 miles. Within the City of Pocatello were 59.29 miles of yard track, sidings and spurs. The City of Pocatello and T. C. Coffin, as mayor of Pocatello, individually and in behalf of other taxpayers similarly situated, sued out a writ of review against the board, complaining mainly that the board, in computing the "length of line" and making Pocatello's apportionment, had in both instances, by ignoring sidings, yard tracks and spurs, violated the provisions of C. S., sec. 3187, and that it had failed and refused "to assess, for taxation purposes, any other operating property of said railroad company located in the City of Pocatello, except the mileage of 'main line east and west,' 'main line north and south' and 'second track,'" notwithstanding that situate within the city limits was company operating property of the reasonable value of $5,203,538. Indicting this method of procedure, petitioners arraigned it as follows:

"That in valuing or assessing for taxation purposes the said operating property of the Oregon Short Line Railroad Company within the City of Pocatello, according to the method aforesaid, said Board has wholly exceeded its jurisdiction; and the power and jurisdiction attempted to be exercised by said Board in determining the value of the operating property of said railroad within the City of Pocatello, according to the method above set forth and complained of, has not been, by Constitution or statute, granted to said Board; but is wholly without warrant or authority in law.

"In spite of the fact that there is located within the territorial limits of the City of Pocatello operating properties of the Oregon Short Line Railroad Company of enormous value, all as hereinbefore set out, the assessed value for taxation purposes of said property, as assessed

and determined by the said State Board of Equalization, is far less than the value at which other property within the territorial limits of the City of Pocatello is assessed for the reason that other taxing sub-divisions through which the lines of the Oregon Short Line Railroad Company pass likewise receive from the State Board of Equalization an assessed valuation for taxation purposes of the property of the Oregon Short Line Railroad Company within their territorial limits in proportion to the number of miles of main line, branch line and second track within each such taxing unit, respectively, and inasmuch as these other taxing units in many instances do not have within their territorial limits any operating property of said Oregon Short Line Railroad Company other than one or more of the classes of railroad trackage last mentioned, they receive, as part of the assessed valuation of said railroad company within their territorial limits, a large part of the value of the operating property of said railroad company's property which is located within the City of Pocatello. That as a result thereof the property of the plaintiff T. C. Coffin, and all other tax payers within the City of Pocatello, are taxed on an entirely different basis and valuation than is the operating property of said railroad company; that is to say that the operating property of said railroad company within said city is taxed therein on the basis of less than 5 per cent of its cash value, while the property of plaintiff T. C. Coffin, and all other tax payers within the city of Pocatello, is taxed therein on a basis of not less than sixty percent of its full cash value.

"That wholly by reason of the wrongful and unlawful method used by said State Board of Equalization in assessing for taxation purposes the operating property of said Oregon Short Line Railroad Company situated within the City of Pocatello all taxes have not been, and are not, uniform on the same class of subjects within the territorial limits of the City of Pocatello, as required by Section 5, Article 7, of the Constitution of Idaho; nor has the property of the Oregon Short Line Railroad Company, a corporation, been subject to taxation within the territorial limits of the City

of Pocatello, as required by Section 8, Article 7, of the Constitution of Idaho."

The defendant board filed its return, relying upon the method pursued, and moved to quash the writ, for the reason that the application did not show sufficient facts to warrant relief, upon its face showed that the board had regularly pursued the constitutional and statutory authority vested in it, and had not exceeded its lawful jurisdiction.

C. S., sec. 3187, provides that the list of railroad properties required to be furnished the board shall show "the entire length of the system, the length of the system in this state, the length of the line owned and the length of the line operated for the whole system and in this state being separately shown; the total number of miles of each line within the state, the number of miles of main line, branch line, second track, siding and spurs being separately shown and the number of miles within any county, and within any incorporated city, town or village, and within any school or other taxing district into or through which said line extends."

C. S., sec. 3189, provides that the board shall determine "the total value, the number of miles and value per mile of each railroad . . . . line in the state, the value, number of miles, and value per mile of such line in any county into or through which the said line extends, and the value, number of miles and value per mile, of such line in any incorporated city, town, village, school district or other taxing district into or through which the said line extends. The value per mile of any line except electric current transmission lines, is to be determined by dividing the total value of such line within the state by the number of miles of such line within the state."

Petitioners insist that the correct method of apportionment should be based upon the value of the line consisting of all trackage, right of way, the superstructures thereon, including freight and passenger depots and the proportionate value of the franchise but excluding rolling stock, repair-shops, power generating plants and all other operating property, leaving to the separate taxing units the benefit arising from

taxation of the excluded property within their respective limits. In other words, no operating property other than that enumerated should be considered and assessed as part of the line.

To us, this contention is clearly untenable. C. S., sec. 3183, provides that the operating property of all railroads shall be assessed for taxation exclusively by the board. C. S., sec. 3106, defining the term "operating property," specifically enumerates "tracks." "Tracks" are not synonymous with "line," but merely integral portions thereof. Everything essential to the operation and maintenance of a railroad transportation system is a constituent part of the "line." Bereft of rolling stock, repair-shops and other adjuncts, the naked track would be ineffective for any purpose: the "line" does not exist except in the active functioning of all its parts. It is contended that C. S., sec. 3187, by requiring a separate listing by the railroad company of its mileage in main lines, branch lines, second tracks, sidings and spurs, clearly indicates that the aggregate trackage shall be understood to constitute "the length of line." That provision was for the board's information only, upon which it was to base its assessment. It was the evident intention that the aggregate trackage of each line be assessed as a whole, not piecemeal. To award a separate value to each particular section of track as a separate unit, independent of its relation to the multitudinous, other fractions connected therewith would have been impossible. Aside from their intrinsic value as junk, many of them would have no value at all. In fact, no section of track can be valued in and of itself. As an active, participating entity, it depends for its value not only upon every other stretch of steel in the line, but upon every other piece or parcel of operating property employed in maintaining the line. Declaring that a railroad company having its lines in many counties of the state would hardly ask that its property be assessed in different units by the assessors of each county, acting independently of each other, this court said in *Blomquist v. Board of County Commrs.*, 25 Ida. 284, 298, 137 Pac. 174: "The situs of such property is not in any one county but

in the state, in a number of counties, and to follow out the spirit of the constitutional provision is to provide some means whereby such property is assessed as a whole by officers having jurisdiction of the whole." The requirement of C. S., sec. 3187, that there be a separate listing of main lines, branch lines, second tracks, sidings and spurs is merely for the purpose of enabling the board to have before it in detail the respective sections of trackage in relation to each other and the purposes served. To that end, every foot of trackage of whatever nature and wherever physically situate enters into the total assessed valuation of the line of which it is a part.

While not questioning the constitutionality of the statutes themselves, petitioners contend that the board's action in refusing to apportion to the City of Pocatello for municipal taxation some $5,000,000 worth of operating property located therein violated the provisions of sections 5 and 8 of article 7 of the state Constitution, the former requiring that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax and must be levied and collected under general laws to secure a just valuation of all the property, and the latter declaring that the power to tax corporations or corporate property shall never be relinquished or suspended, and all corporations in the state or doing business therein shall be subject to taxation for state, county, school, municipal and other purposes.

Section 12 of article 7 of the Constitution created the State Board of Equalization "whose duties shall be prescribed by law." As before said, C. S., sec. 3183, provides that the assessment of railroad property shall be the exclusive business of the board. Declaring that, in providing systems for taxation, it was the fundamental idea of the framers of the state Constitution that there should be a uniform valuation of property throughout the state, this court, in *Blomquist v. Board of County Commrs., supra*, directly held that assessment of such property by the board effectuates the spirit of the Constitution. In that case, the court cited with approval *Ames v. People*, 26 Colo. 83, 56 Pac. 656, which declared that a constitutional provision could

not prohibit the legislature from conferring upon some other tribunal the power to assess a class of property "which the assessors cannot, in the very nature of things, so assess as to bring about its just valuation commanded by other constitutional provisions." With the one exception of separately assessing second tracks, not only was the method of total valuation pursued by the Board warranted by a reasonable construction of the statutes but such method is and has been generally approved in other jurisdictions. A leading case is *Taylor v. Secor*, 92 U. S. 575, 23 L. ed. 663, where the court observed on pages 671, 672:

"It is further objected that the railroad track, capital stock and franchise is not assessed in each county where it lies, according to its value there, but according to an aggregate value of the whole, on which each county, city and town collects taxes according to the length of the track within its limits.

"This, it is said, works injustice both to the counties and to the companies. To the counties and cities, by depriving them of the benefit of this value as a basis of local taxation; to the company, by subjecting its track and franchises, on the basis of this general value, to the taxation of the counties and towns, varying, as they do, in rate, without the benefit of the rule of assessment which prevails in those counties in the valuation of other and similar property. But, as we have already said, a railroad must be regarded for many, indeed for most purposes as a unit. The track of the road is but one track, from one end of it to the other, and, except in its use as one track, is of little value. In this track as a whole, each county through which it passes has an interest much more important than it has in the limited part of it lying within its boundary. Destroy by any means a few miles of this track, within an interior county, so as to cut off the connection between the two parts thus separated, and, if it could not be repaired or replaced, its effect upon the value of the remainder of the road is out of all proportion to the mere local value of the part of it destroyed. A similar effect on the value of the interior of the road would follow the destruction of that end of the road lying in

Chicago, or some other place where its largest traffic centers. It may well be doubted whether any better mode of determining the value of that portion of the track within any one county has been devised than to ascertain the value of the whole road, and apportion the value within the county by its relative length to the whole.''

Particularly appropriate was the language of *State v. Back*, 72 Neb. 402, 100 N. W. 952, at 956–960, 69 L. R. A. 447:

''It is earnestly contended by the relators that the several railroad companies having lines in the city of Omaha have valuable terminal facilities, depots, and other properties on their right of way and side tracks which have a fixed and actual physical situs, and as such are subject to local taxation upon such values, and that by the distribution of the total value of any one road over the entire line on a mileage basis is to withdraw from taxation for municipal purposes property situated within the municipality, thereby resulting in a violation of the provisions of the Constitution that all property shall bear its just share of tax burdens of the taxing jurisdiction in which it is situated. . . . .

''The principle underlying the legislation complained of undoubtedly is that every portion of the property of a railway company going to make up the whole is interdependent, and that the situs must be determined with respect to the entire property, and not any fractional portion of it. The Legislature has fixed or undertaken to fix the legal situs of a railroad where the organic structure is, in all the counties and subordinate districts through which the road is constructed, and has provided for the apportionment of a share of the total value to each taxing district in proportion to the length of the main track in such district, upon which taxes are to be levied for all purposes. It is the fractional proportion of the whole distributed to any one taxing district that represents the taxable property of such railway line in such district, rather than the physical property found therein.''

Other approving authorities are 2 Cooley on Taxation, 4th ed., par. 490, p. 1081; *Union Pac. Ry. Co. v. Ryan,*

113 U. S. 516, 5 Sup. Ct. 601, 28 L. ed. 1098; *Adams Express Co. v. Ohio State Auditor*, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. ed. 683; *Northern Pac. Ry. Co. v. State*, 84 Wash. 510, Ann. Cas. 1916E, 1166, 147 Pac. 45, citing authorities; *Chicago & Northwestern Ry. Co. v. State*, 128 Wis. 553, 108 N. W. 557; *State v. Western Union Tel. Co.*, 96 Minn. 13, 104 N. W. 567, and others too numerous to mention. Since, under this method, all railroad property is uniformly taxed throughout the state, each taxing unit levying according to the value of such property within its territory, neither section 5 nor section 8 of article 7 has suffered violence.

We find difficulty with the board's method of disposing of second track or second main line. By second track, we mean double or passing tracks, as distinguished from sidings and spurs. As we understand it, there are several stretches of such track on each of the main lines. They are not independent lines in any sense but are facilities to each of the lines of railroad under consideration. The board found that there are 271 miles of such track. This was valued as a separate, distinct line and its mileage value determined by dividing the total value of double or passing track by its total mileage; and Pocatello was awarded a value for such property by multiplying the mileage of such trackage in the city by its per mile value. We think this unauthorized. The board has no power or authority under the statute separately to value and assess second track as a separate and distinct line. It must be valued and assessed as part of the line of which it is a facility. However, Pocatello cannot complain, since the point is not raised and she was given an assessment value by reason of this error probably greater than would have resulted from adding the value of such trackage to the respective lines and thereby increasing the mileage value of the lines within the city.

Coming now to the contention that the board in computing the length of line should have included sidings and spurs, we have heretofore indicated our disbelief that the legislature ever intended to include them. That it purposed to impose upon the board an impracticable, tedious, and, with the machinery at hand, almost insuperable burden

is hardly probable. The lines of this system devoted to freight and passenger traffic traverse thirty-two or more counties. Many of these are sparsely settled yet necessitate the presence of numerous spurs, sidings and second tracks. Hundreds of taxing units embrace them. A reference to the record shows that in Bannock county alone are fifty-five taxing units, in Bingham, forty-nine, Madison, thirty-two, containing construction often no more than .12 (12/100) miles in length, not seldom less. If C. S., secs. 3187–3189, command the board to increase its divisor by adding these myriad fragments to the sum of main lines, branch lines and second tracks, separately multiply the fragments within each taxing unit by the quotient reached and certify the results to the several county auditors, manifestly, the duty entails a series of operations consumptive of enormous time and labor, to the prejudice of all other duty, and makes any equitable apportionment impossible. To insure each taxing unit a fair and equitable proportion of the tax derived from assessment of the entire lines having their situs as a whole in no particular unit but in the state at large, the most practical method yet evolved would seem to be that of according to each taxing unit that proportion of the entire valuation which the length of active line within it bears to the total length of the particular active line employed in transporting freight and passengers from point to point within the state. As the Attorney General pertinently notes in his brief, "If the valuation is to be made as a whole, spurs and sidings cannot be considered in order to equitably distribute the assessed valuation because *where the bulk of the operating property is located will also be found the bulk of the spurs and sidings.* The only reason for the large number of miles of yard tracks and sidings in Pocatello is the fact that it is a division point and the railroad shops are located there. To give to Pocatello the benefit of those sidings in fixing the apportionment of the assessed valuation of the system is to subtract that value from the line of railroad the legislature has for eighteen years approved as the proper basis for apportionment."

In 1924, the supreme court of Missouri had this very contention before it. Section 7725 of the Missouri code corresponding with section 3189 of our compilation provided that "said Board shall apportion the aggregate value of all property hereinbefore specified belonging to or under control of each railroad company, to each county, municipal township, city or incorporated town in which such road is located, according to the ratio which the number of miles of said road completed in such county municipal township, city or incorporated town shall bear to the whole length of such road in the state," and section 7727 provided that the state auditor should certify to the county courts "the entire length of such railroad, including sidetracks, in the state, and the valuation thereof per mile; the total value of the rolling stock of said railroad; the total length of the road bed, including sidetracks, in each county, city, town, village and municipal township; also, the total value of the roadbed and sidetracks and rolling stock as adjusted, equalized, assessed and apportioned to each county, city, town, village and municipal township therein by said Board."

Disposing of the matter, the court said in *State v. Stone,* 119 Mo. 668, 25 S. W. 211, 213:

"After the board has ascertained the value of this thing, made up of tracks, depots, water tanks, turntables, rolling stock, etc., known in common parlance and denominated in this statute as a railroad they are to apportion that value among the several municipalities of the state in which any part of this whole thing is located, by a certain standard of length,—a mile. A mile of what? There can be but one answer. A mile of the thing called a railroad, made up of the items mentioned in section 7718, the value of which as a whole is to be apportioned for such purpose. The number of miles of the railroad in this state, or within any municipal subdivision thereof, is not to be measured by the length of its main tracks, or of its main track and side tracks combined, any more than it is to be measured by the combined length of its main tracks, side tracks, rolling stock, and the other property which go to make up the road value to be apportioned. It is the length of the whole thing, a railroad, which these

several constituents, in place, go to make up, that is to be measured. Its length between its terminal points in this state, and its length in the several municipal subdivisions of the state, is to be ascertained, and its value apportioned to each of said municipalities in the ratio that its length in the municipality bears to its whole length in the state. This is the obvious meaning of the statute, and the construction that has been placed upon it by the board of equalization from the beginning.''

To the same effect is *Morgan's Louisiana & T. R. & S. S. Co. v. Aucoin,* 140 La. 768, 73 So. 859, 861. To cite further authority would render this opinion undesirably long. The construction applied in *State v. Stone, supra,* has for years been applied in the main by our own board. Since 1913, the legislature has not seen fit to question or condemn that construction. Supported as it is by both reason and precedent, we do not feel justified in departing from it. ''Administrative interpretation of a given law, while not conclusive, is, if long continued, to be reckoned with most seriously and is not to be disregarded and set aside unless judicial construction makes it imperative to do so.'' (*Industrial Com. v. Brown,* 92 Ohio St. 309, 110 N. E. 744, L. R. A. 1916B, 1277.)

Writ quashed; costs to defendants.

Givens, Varian and McNaughton, JJ., concur.

Budge, J., took no part in the decision.