RED WILLOW COUNTY, PLAINTIFF IN ERROR, v. THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, DEFENDANT IN ERROR.

[FILED JUNE 13, 1889.]

1. **Railroads: TAXES.** Where real estate is in fact used for roadbed and right of way purposes at a railway station, and it is apparent that no more land has been taken than seems necessary for the present business and necessities of the corporation in the near future, such land, under the statute, is to be assessed by the state board, although all of such real estate may not be covered with railway tracks.

2. ——: ——. All real estate and personal property of a railway company outside of right of way and depot grounds, are to be listed by one of the principal officers or agents of such corporation and assessed by the assessor of the precinct where the property is situated.

3. ——: ——. A roundhouse of a railway company was assessed by the local assessor at $10,000, and the railway company

claimed that it had listed the same with the state board, which had levied taxes thereon that it had paid. The proof failed to show whether or to what extent the roundhouse was also used as a repair shop. *Held,* That unless it was also used as a repair shop, so as to make it such shop as well as a roundhouse, the assessment should have been made by the state board, and not by a local assessor.

ERROR to the district court for Red Willow county. Tried below before COCHRAN, J.

*R. M. Snavely,* for plaintiff in error.

*Marquett & Deweese,* for defendant in error.

MAXWELL, J.

This action was brought by the defendant in error against the plaintiff in error in the district court of Red Willow county to recover certain taxes paid by it to said county under protest. The second cause of action, which is most important, is stated as follows:

"On the —— day of April, 1884, the assessor of Willow Grove precinct in said county, assessed the following described real estate owned by this plaintiff, to wit: commencing at southwest corner of southwest fourth, section 29, township 3, range 29 west, Red Willow county, Nebraska; thence north on section line between sections 28 and 29, township and range aforesaid, to a point 150 feet north of and at right angles with center line of the Republican Valley Railroad as located; thence west parallel with and 150 feet from said center line to a point about 590 feet west of east line of northeast fourth of southeast fourth of section 30, township and range aforesaid; thence southerly 100 feet to a point 50 feet perpendicularly and on north side of said center line; thence westerly parallel with and 150 feet distant from said center line to west line of northeast fourth of southeast fourth of section 30 in

said township; thence south to southwest corner of northeast fourth of said section 30; thence east on south line of said northeast fourth of southeast fourth of said section 30, to southeast corner thereof; thence east on south line of the northwest fourth of the southwest fourth of said section 29, to the southeast corner of said northwest fourth of southwest fourth of section 29; thence south on west line of southeast fourth of southwest fourth of said section 29, to south line of said southwest fourth; thence on south line of said section 29, to place of beginning in said precinct and county; with improvements thereon; for the sum of $10,400 for the year 1884. The board of county commissioners of said county, on the —— day of June, 1884, levied a tax thereon of $342.14 for that year, being a levy among other taxes of $7\frac{7}{8}$ mills state tax, 14 mills county tax, and 5 mills district-school tax. Of the land above described, 40.75 acres is and constitutes a part of the depot grounds of said plaintiff, and was at the time of such assessment and levy a part of the depot grounds of and owned by said plaintiff at McCook station. The said land, without the improvements thereon, was assessed at $400. The above described land at the time of said assessment and levy, had a roundhouse and store-house located thereon belonging to said plaintiff, and said roundhouse and store-house were assessed by said assessor at the sum of $10,000. Said land owned by said plaintiff, with the improvements thereon, including the 179.75 acres, were returned as a sum total by said assessor, and entered on the tax lists. Said 40.25 acres, the depot grounds aforesaid, were returned by the plaintiff to the state board of railroad assessments of Nebraska, and were duly assessed by said board as depot grounds, with said improvements thereon, which assessment was afterward duly certified by the auditor of state to the county clerk of said county, and by him entered on the assessment rolls and tax list of that year, and were included in the value per mile of the property of said plaintiff.

"On the —— day of June, 1884, in accordance with said assessment and valuation by said assessor of Willow Grove precinct as aforesaid, the board of county commissioners of said county levied upon said tract and the improvements thereon, as one body, the taxes above set forth, and also levied a tax on the valuation as certified by the auditor of state to the county clerk of said county, as hereinbefore stated. The tax levied on such property by virtue of the assessment made by said state board was paid by this plaintiff prior to the 1st day of January, 1886. By reason of the foregoing, the plaintiff was doubly assessed and taxed, for the year 1884, on said 40.25 acres, used as depot grounds, including a roundhouse and store-house thereon.

"On the 28th day of April, 1886, the plaintiff paid under protest, to the treasurer of said county, the taxes assessed by said assessor and levied by said board of county commissioners, being $342.14, with interest theron, $33.83, amounting to $375.97.

"On the 21st day of May, 1886, the plaintiff demanded in writing of the treasurer of said county the repayment of the taxes so paid under protest, which demand was rejected and refused.

"On the 21st day of May 1886, the plaintiff demanded of the board of county commissioners of said county, the repayment of said taxes, and filed with the county clerk of said county, its claim for the sum of $125.50 county taxes so paid under protest, and asked the refunding of the same.

"On the 6th day of August, 1887, the board of county commissioners being duly assembled in regular session, and having said claim of the plaintiff for refunding of said taxes under consideration, refused to order said amount refunded, but rejected and disallowed the plaintiff's said claim.

"No part of said taxes have been refunded or paid, and there is now due and unpaid of county taxes from the de-

fendant to the plaintiff on the two causes of action set forth in plaintiff's petition, the sum of $316.40, with interest thereon from the 28th day of April, 1886."

On the trial of the cause in the court below, judgment was entered in favor of the defendant in error.

Mr. P. T. Francis, the precinct assessor in 1883 and 1884, was called as a witness by both parties, and testifies that the total valuation of the railway property assessed by him in 1884, was $10,400.

Q. What items enter into and make that valuation?

A. Two hundred acres of land, with roundhouse and store-house, and other buildings.

Q. What was the land valued at?

A. Two hundred dollars per acre.

Q. How many acres of land in that?

A. Returned by the county clerk, 200 acres, on the book here.

Q. Then what was the store-house and roundhouse assessed at?

A. Ten thousand dollars.

Q. That was the year 1884?

A. Yes, sir.

Q. This roundhouse and store-house is at the station of McCook, in Red Willow county, this state?

A. Near there.

Q. Now this 200 acres of land was assessed as one body?

A. It was, and so returned on the assessor's book. The description of the land and the amount is inserted in the book by the county clerk, from the records, and returned to the assessors for their appraisement.

Q. The roundhouse and store-house of which you speak is situated on the land described on page two?

A. It is.

Cross-examination:

Q. As to page two, you say that your assessment of

Red Willow County v. C. B. & Q. R. R. Co.

$10,400 was made on the 200 acres of land described on that page, and the roundhouse?

A. Roundhouse, and, I think, store-building; I am not certain; I couldn't tell the amount outside of the round-house; that I remember then was on the ground, and was part of the property I assessed; and there was some other property there.

Q. You cannot testify then that you actually assessed the store-building?

A. No, sir, I couldn't testify exactly as to that; but I see a memorandum on this page, which is in my hand-writing, showing that there was a store-building, and was, I think, made at the time of my ——

Q. Did this 200 acres of land include the right of way and depot grounds of plaintiff at said town of McCook?

A. No, sir; not so intended.

Q. This 200 acres of land assessed by you, then, was land owned by the company plaintiff, contiguous to their depot grounds?

A. Yes, sir, contiguous to the depot grounds, and owned —— so listed by the county clerk, as belonging to the Re-publican Valley Railroad Company.

Q. Then in the year 1884, the roundhouse and this 200 acres was assessed at $10,400, and in your assessment it was your intention not to assess the right of way of the company plaintiff and depot grounds?

A. No, sir.

Q. And they were not, in fact, included in your returns?

A. No, sir.

Q. You cannot testify as to what other or any other par-ticular buildings that were assessed in that assessment but the roundhouse?

A. No, I couldn't, from memory, tell what there was on the ground at that time; all I have is this memorandum I have on the book here, containing roundhouse and store-building.

Q. How far is this roundhouse situated from the depot of plaintiff, the railroad company?

A. I couldn't tell you; I never measured the distance.

Q. It is considerably isolated from the depot of plaintiff, is it not?

A. I would estimate it at about 700 feet; but it is an estimation. If they have a plat there it would probably show exactly; but I have no plat of it and cannot tell you exactly.

Q. How much of this 200 acres of land that you assessed, did the plaintiff at that time have side tracks and depot tracks upon, if any?

A. I couldn't tell you; they had a track running to the roundhouse.

Q. That is the only track ——

A. I wouldn't say whether that was the only track or not; I cannot remember. I don't remember the number of tracks. I know they had a track running to the roundhouse.

Q. In the year 1883 what improvements and land, if any, did you return included in your assessment, on page one, of $10,000?

A. Of $10,000?

Q. Yes, sir.

A. The south part of the southwest of the southwest quarter of section 29, town 3, range 29.

Q. Twenty-three and eighteen hundreths acres in that?

A. Twenty-three and eighteen hundredths acres.

Q. And what buildings or personal property?

A. The roundhouse; I couldn't tell whether any other property or not, but the roundhouse.

Q. The roundhouse is the only thing you can testify to?

A. The roundhouse I can testify to; that, I remember, was there—was the main building; that I am certain of; but what other property there was on the land, I am not certain of.

Q. Do you remember whether you included any depot grounds or right of way of plaintiff in that assessment?

A. It was returned to me by the county clerk on the assessor's book as a part of such section; I didn't suppose any land would be returned to assess that was right of way; the law distinctly says that the state board assesses that.

Q. Was that land included in the land that you did return?

A. No, sir.

Q. Were the depot grounds returned in ——

A. No, sir; the depot grounds, as I understood, were on the other side of the track.

Q. Did you, in your assessment of 1883, page 1 of assessment book — did you assess or include in the assessment the depot buildings or any right of way?

A. No, sir.

Q. Then they were not valued by you at all in your assessment?

A. No, sir.

Sec. 39, art. 1, chap. 77, Compiled Statutes, provides: "The president, secretary, superintendent, or other principal accounting officers, within this state, of every railroad or telegraph company, whether incorporated by any law of this state or not, when any portion of the property of said railroad or telegraph company is situated in more than one county, shall list and return to the auditor of public accounts for assessment and taxation, verified by the oath or affirmation of the person so listing, all the following- described property belonging to such corporation on the first day of April of the year in which the assessment is made within this state, viz.: the number of miles of such railroad and telegraph line in each organized county in this state, and the total number of miles in the state, including the road bed, right of way, and superstructures thereon, main and side tracks, depot buildings and depot grounds,

section and tool houses, rolling stock and personal property, necessary for the construction, repairs, or successful operation of such railroad and telegraph lines: *Provided, however,* That all machine and repair shops, general office buildings, store-houses, and also all real and personal property, outside of said right of way and depot grounds as aforesaid, of and belonging to any such railroad and telegraph companies, shall be listed for purposes of taxation by the principal officers or agents of such companies, with the precinct assessors of any precinct of the county where said real or personal property may be situated, in the manner provided by law for the listing and valuation of real and personal property."

There is no material conflict in the testimony. The land in controversy was not a part of the road-bed or right of way of the railway of the defendant in error. The most that can be said is that it was purchased by the railway company in anticipation that sometime in the future it might be necessary for tracks, etc. But this is not sufficient. Land to constitute road-bed and right of way must in fact be used for that purpose. This was the case in *B. & M. R. R. Co. v. Lancaster County*, 7 Neb. 33, and also in *B. & M. R. R. Co. v. Lancaster County*, 15 Neb. 251. In the cases cited the principal contention was that the ground was not all occupied by the railway tracks; in other words, the company had not covered the land with sidetracks. It did appear, however, that the land was used for the sole purpose of laying side tracks thereon, and that such tracks were being laid continuously, as demanded by the business of the company. The court held, therefore, that the whole would be treated as road-bed and right of way. A corporation will not be permitted, however, to purchase real estate for which it has no immediate use as a part of its right of way, and return the same for taxation as a part thereof, if in fact it is not used for that purpose. When real estate is in fact used for road-bed and right of

way purposes at a station, and it is apparent that no more land has been taken than seems to be necessary for the present business and necessities of the company in the near future, such land, under the statute, is properly assessed by the state board, although all of such real estate may not be covered with railway tracks, provided it is used for that purpose, and such tracks are being laid as fast as the business of the company demands it. In the case at bar, however, there is no proof that any of the land in question was used for right-of-way purposes, except the single track to the roundhouse. The plat introduced in evidence by the defendant in error shows another track over the land; but the proof does not show it to have been laid in 1883 or 1884; and even if it did, it would not render such a large amount of land road-bed and right-of-way.

There is no claim that other portions of the large tract in question were used for right-of-way. Such land, except 100 feet in width to the roundhouse, was to be assessed by the local authorities. The store-house was clearly taxable also. The proof fails to show whether the roundhouse was used for a repair shop or not. If so used, it was to be assessed by the local authorities; if otherwise, not.

The judgment of the district court is reversed, and the cause remanded for a new trial.

REVERSED AND REMANDED.

THE other Judges concur.