(No. 6755. April 27, 1940.)

ADA COUNTY, a Political Subdivision of the State, BEN S. EASTMAN, SAM T. DAVIS, CLAUDE R. DAVIS, HARRY K. FRITCHMAN and W. E. PIERCE, Plaintiffs, v. C. A. BOTTOLFSEN, Governor, J. W. TAYLOR, Attorney General, GEORGE H. CURTIS, Secretary of State, CALVIN E. WRIGHT, State Auditor, and MYRTLE P. ENKING, State Treasurer, Being and Constituting the State Board of Equalization, Defendants, and OREGON SHORT LINE RAILROAD COMPANY, and UNION PACIFIC RAILROAD COMPANY, Intervenors.

[102 Pac. (2d) 287.]

Kenneth O'Leary, Willis C. Moffatt and Maurice H. Greene, for Plaintiffs.

J. W. Taylor, Attorney General, R. W. Beckwith, E. G. Elliott, Lawrence B. Quinn and D. W. Thomas, Assistant Attorneys General, for Defendants.

Geo. H. Smith, H. B. Thompson and L. H. Anderson, for Intervenors.

GIVENS, J.—Plaintiffs, respectively Ada County and individual taxpayers residing therein, challenge by original writ of review (writ granted, *Ada County v. Bottolfsen, ante,* p. 64, 97 Pac. (2d) 599) the authority of the state board of equalization to assess some 23 parcels of real estate belonging to the Oregon Short Line Railroad Company and the Union Pacific Railroad Company, intervenors, on the ground said parcels are not operating property within sections 61–113, 61–601 and 61–603 I. C. A., and that as assessed by the state board such properties are not assessed for their true value and in the same manner and equally with other property throughout the county, thereby imposing a greater burden on plaintiff taxpayers and all others similarly situated.

*In limine* and so far as the latter contention is concerned if and so far as the assessment by the state board is less than the full, true and correct valuation of said property should have been, relief is to be had at the hands of the state board by an increase in the valuation of the said property as reflected in the value of the mass of operating property belonging to intervenors throughout the state. In other words, if the parcels of land herein are operating property their under valuation by the state board would not be justification for assessment other than by the state board.

The state board of equalization is a constitutional board. (Art. 7, sec. 12.) The assessor is a constitutional officer. (Art. 18, sec. 6.) Thus of equal constitutional creation and authority whose duties are equally to be prescribed by the legislature. (Art. 7, sec. 12, art. 18, sec. 11.)

In territorial days certain property of railroads was assessed by the territorial board of equalization and other property by the county assessors. (Statutes of 1887, sec. 1463.)

The line of demarcation and definition of what constitutes property to be assessed by the territorial or state board of equalization as distinguished from that to be assessed by

the county assessors has varied without uniformity or continuity of definition from time to time. (1893 Sess. Laws, p. 75, sec. 9 of the act there set forth; 1895 Sess. Laws, p. 114, sec. 1490; 1899 Sess. Laws, p. 254, sec. 16; 1901 Sess. Laws, p. 257, sec. 74; secs. 61–113, 61–601, 61–603, I. C. A.) In their present form the statutes first appeared in 1913 Session Laws as part of a complete revenue act passed that year, page 178, section 11, page 199 and section 86, page 199, section 88.

With the exception of three parcels of land which are vacant, unoccupied lots adjoining intervenors' right of way in Boise City, Ada County, 17 parcels involved are leased under or for a term of years to various coal, seed and lumber concerns; and one parcel to the United States Reclamation Service, one to a general contracting concern, and one to a stage company.

All leased parcels have erected thereon structures used for warehouse and storage purposes by said concerns. The buildings are assessed by Ada County to the lessees. The courts have recognized and sanctioned the assessment of buildings separate and apart from the land on which they are situated under similar circumstances. (*Third & Broadway Bldg. Co. v. Southern California Edison Co.*, 132 Cal. App. 186, 22 Pac. (2d) 574; *Pacific Tel. & Tel. Co. v. State Board of Equalization,* (Cal.) 259 Pac. 42; *Third & Broadway Bldg. Co. v. Los Angeles County*, 220 Cal. 660, 32 Pac. (2d) 377; *Central Mfg. Dist. v. State Board of Equalization*, 214 Cal. 288, 5 Pac. (2d) 424.)

None of interveners' tracks are on these parcels of land though immediately adjacent thereto and intervenors' cars are unloaded directly into these structures. Other than certain restrictive provisions in the said leases that said properties must be used only for storage purposes and must not be illegally used, said intervenors have no control over said premises while used and occupied by said lessees. Six of said parcels since 1917 have been returned by said intervenors to the state board of equalization as in effect part and parcel of the original right of way and terminal grounds in Boise City; the other parcels were originally contained in a so-called "citizens' right-of-way" extending roughly east and

west and parallel to intervenors' right of way through Boise City and beyond. Said citizens' right-of-way having been originally acquired by a number of citizens of Boise and thereafter held for prospective railroad purposes. 1923 said citizens' right-of-way was sold to intervenors in connection with its construction through Boise City of its so-called "main line," said intervenor Oregon Short Line Railroad previously serving Boise by a branch line from Nampa, the junction with the main line east and west through Idaho. (*In re Sherman v. Citizens' Right of Way Co.*, 37 Ida. 528, 217 Pac. 985.)

While it is contended the above case approving and ratifying said sale, by implication, if not directly classified said citizens' right-of-way as operating property within the meaning of the above sections of the code, said case did not so decide or determine.

*Oregon Short Line Railroad Co. v. Yeats*, 2 Ida. 397, 17 Pac. 457, construed the territorial statute of 1887 with regard to the term "right-of-way" as therein used, holding that under the terms of the territorial statute any machine shop and repair shop not situate on the right of way or grounds or other real estate of any (railroad) company or corporation (not situate on said right-of-way) should be assessed by the county assessor, and *Oregon Short Line Railroad Co. v. Gooding*, 6 Ida. 773, 59 Pac. 821, construed the 1893 statute *supra*, thus:

"We hold in this case that the right of way, track, whether main, side, or turnouts, and all improvements and superstructures upon the right of way, and rolling stock are under the statute, to be assessed by the state board of equalization, and all other property of railroad companies is to be assessed, under the statute, by county assessors."

*Chicago, Milwaukee & St. Paul Ry. Co. v. Kootenai County*, 33 Ida. 234, 192 Pac. 562, construing the word "terminal" in the present statute, section 61-113, held that property acquired for ultimate terminal uses though not then so used should be classed as terminal property and should be assessed by the state board of equalization as operating property, but that where such intention was negatived such real estate should be assessed by the county assessor and held the assess-

ment by the county assessor void because it included in the one assessment property correctly and incorrectly assessed by the assessor on the ground that the assessment by the county assessor was indivisible.

In a controversy between intervenors herein and appellant county the federal court (*Oregon Short Line R. Co. v. Ada County*, 18 Fed. Supp. 842) construed the above decisions as authorizing the assessment by the state board of this property as terminal facilities.

*City of Pocatello v. Ross*, 51 Ida. 395, 6 Pac. (2d) 481, involved solely the question of what tracks as between main line, second main line, spurs and side tracks, should be considered as the length of line within the respective taxing units within the state, thereby apportioning to them their taxable proportion on the entire mass of railroad property within the state. (Sec. 61–607, I. C. A.)

Thus none of the previous decisions of this court have passed upon the question now before us. (*Oregon Short Line R. Co. v. Ada County*, 18 Fed. Supp., *supra*, was sustained by the Circuit Court of Appeals in *Ada County v. Oregon Short Line R. Co.*, 97 Fed. (2d) 666, justifying the assessment by the state board of equalization as terminal facilities reasonably necessary to the successful operation of the railroad, upon the definition in *Minneapolis St. P. & S. S. M. Ry. Co. v. Douglas County*, 159 Wis. 408, 150 N. W. 422, Ann. Cas. 1916E, 1199, as approved by this court in *Chicago, Milwaukee & St. P. Ry. v. Kootenai County*, *supra*, thus holding that the property here was operating property within section 61–113, I. C. A., and also that the assessment by the county assessor was void as indefinite. While reference was made in both federal decisions to sections 61–113 and 61–603, said sections were not by said opinions nor in *Chicago, Milwaukee & St. Paul Ry. v. Kootenai County*, *supra*, analytically compared and construed together which we believe they must be.

In the statute as originally passed by the 1913 legislature, now section 61–113 was section 11, page 178, 1913 Session Laws in article 1, entitled by the legislature "Property Subject to Taxation, Exemptions, Definitions, Lien." Sections 61–601 and 603 were respectively sections 86 and 88,

page 199, article 5, entitled by the legislature, ''Assessment of Railroads, Telegraph, Telephone and Electric Current Transmission Lines.''

■ Section 61–113, I. C. A., is inclusive as to the property to be assessed by the state board of equalization and exclusive as to the property to be assessed by the county assessor. Sec. 61–603, I. C. A., is inclusive as to property to be assessed by the county assessor and exclusive as to property to be assessed by the state board.

The difficulty presented herein arises by the fact that the phrases, clauses, and terminology of sections 61–113 and 61–603, I. C. A., are not identical but tend to be contradictory and confusing.

■ Separating section 61–113, into its constituent clauses as confined to railroads, as we are justified in doing (*In re Speer*, 53 Ida. 293, 23 Pac. (2d) 239, 88 A. L. R. 1086), we have the following as defining operating property (underscoring ours) : (1) The term ''operating property'' shall include all rights of way, road beds, tracks, terminals and land owned by any railroad. (2) The term ''operating property'' shall include all immovable property owned by any railroad. (3) all immovable property used by any railroad; (4) all immovable property operated by any railroad; (5) all immovable property operated in connection with any railroad; (6) all stations, grounds and super-structures upon the rights of way and station grounds of any railroad; (7) all other immovable property used by any person owning, operating or constructing any line or railroad and reasonably necessary to the maintenance and operation of such road or line or in conducting its business as owner lessee or otherwise; (8) all other immovable property operated by any person owning, operating or constructing any line or railroad and reasonably necessary to the maintenance and operation of such road or line or in conducting its business as owner, lessee or otherwise; (9) all other immovable property occupied by any

person owning, operating or constructing any line or railroad and reasonably necessary to the maintenance and operation of such road or line or in conducting its business as owner, lessee or otherwise.

If number 1 means what it says and is construed literally all immovable property owned by any railroad is operating property and the balance of said section is rendered meaningless. One construction of said section would be that number 1 is modified by 2, 3, and 4; that is, operating property includes (1 A) all immovable property owned and used by any railroad; (1 B) all immovable property owned and occupied by any railroad; (1 C) all immovable property owned and operated in connection with any railroad. What hinders this construction is that "or" and not "and" is the conjunction used.

Segregations 5, 6, 7, 8, and 9 as contradistinguished from the above include all other immovable property not necessarily owned by said railroad but operated or occupied by said railroad as lessee or otherwise and reasonably necessary to the maintenance of said road or line or in connection with its business. The word "owner" in the last line of said section as originally drawn thus either applies to all clauses or only to 1, 2, 3, 4, and 1 A, 1 B and 1 C. So applied we have this resultant definition, that operating property includes as distinguished from 1, 2, 3, 4, and 1 A, 1 B, and 1 C, all other immovable property used by any railroad and reasonably necessary to the conduct of its business, not necessarily as owner but as lessee or otherwise. The intervenors herein are owners, not lessees.

 The first series of clauses in section 61–113, I. C. A., include property owned, used or occupied by the railroad; there the syntax changes and all immovable property operated in connection with any railroad is included and the preposition "by" is not inserted before the phrase operated "in connection with." The same is true as to vacant lots and lots and tracts of land not used in the operation of such railroad. It does not say not used by but not used "in the opera-

tion of," hence by anyone; the operation itself, not by whom, is, or could be, the controlling interpretation.

The context thus militates against the idea that the operation must be by the owner both because the word "by" does not precede the clause in the first part of section 61–113 and because the second portion of said section quite evidently authorizes assessment by the board of equalization of property used but not owned by the railroad.

Section 61–113, I. C. A., does not by its terms state that immovable property owned by the railroad to be classed as operating property must be operated by the railroad, but the clause or phrase thus reads, "immovable property, owned, used or occupied by or operated in connection with any railroad." Even though the context connotes that such operation must be by, the state board of equalization has been held to possess certain discretionary powers.

"The State Board of Equalization is a constitutional board, clothed by statutory authority with quasi-judicial powers in regard to the assessment of certain classes and kinds of property. It is given the power exclusively, and it is required, to value and assess the properties of public utilities. It has the right to exercise a fair discretion in expressing its judgment as to the valuation of such property, and when it has once acted, and there is no fraud shown in its judgment, its action is not subject to review." (*Northwest Light etc. Co. v. Alexander*, 29 Ida. 557, 566, 160 Pac. 1106.)

True the above was said with relation to valuing but the board must first determine what to value. The construction evidently placed on the section by the state board of equalization is not unreasonable, ungrammatical nor contrary to the syntax thereof.

Turning to section 61–603, I. C. A., as originally passed, operating property is defined conversely to section 61–113, I. C. A., as property not reasonably necessary to the maintenance of such railroad, including vacant lots and tracts of land and lots or land with the buildings thereon not used in

the operation of such railroad. Construed alone without reference to section 61–113, I. C. A., this would perhaps justify assessment by the county assessors.

■ As pointed out in *Ada County v. Oregon Short Line R. Co., supra,* these structures are used, as between the railroad and the lessees, the same as though they were owned by the railroad and charges were made to the lessees for storage therein. It is likewise true they are used by the lessees the same as any warehouse in the city adjacent to intervenors tracks. By section 61–113 the use by the railroad company authorizing the placing of the property within the definition of operating property does not depend alone on the maintenance and operation of its line but also "in conducting its business," and some discretion is thereby left to both the railroad and the board of equalization.

It is urged that section 61–603 is the specific statute as to what property is to be assessed by the assessor and thus prevails over section 61–113. Section 61–113 is, however, the specific statute as to what is to be assessed by the state board. Thus one applies to or governs the acts of one board, the other to acts of an official. There is thus to a certain extent an impasse. However the phrases "vacant lots and tracts of lands and buildings" etc. is modified by the clause "not used in the operation of such railroad." And it is significant that it is not required that such property be used "by" the railroad.

Six of these properties have been assessed by the state board since 1917 and the balance have been so assessed since 1925 following the acquisition of the citizens' right-of-way by the intervenors in 1923, without challenge by the county except a prospective suit in 1925 prosecution of which was abandoned upon an opinion by the attorney general of the state upholding the right of the state board to assess (*Ada County v. Oregon Short Line R. Co., supra*) and the present action commenced in 1935.

■■ The court may take judicial notice of the fact that the Reclamation Service is not engaged in business or mercantile pursuits as are the other concerns leasing the lands involved herein. There is not, therefore, such connection be-

tween the Reclamation Service and the railroad ''in conducting its business'' as justifies the assessment by the state board of the lands leased to the Reclamation Service.

██ The vacant lots herein were acquired in 1923 and the fact that they have not been used for any purpose by the railroad sufficiently negatives their classification as present terminal facilities under the rule laid down in *Chicago, Milwaukee & St. Paul R. Co. v. Kootenai County, supra,* assessable by the state board.

As to the balance of the parcels of land plaintiffs cite cases[1] which hold under statutes not as minute or detailed as ours and not containing the phrases and clauses enumerated above, and on various grounds, that lands leased by the railroad to and used by private parties for storage and warehouse purposes were not operating properties under the particular statutes. Other cases[2] have held to the contrary.

██ As indicated above no constitutional question is presented, it is merely a question of legislative intent. With respect to such situation this court early announced and has consistently adhered to the rule that a construction, given a statute susceptible of various constructions, by the executive and administrative officers of the state is entitled to great weight and will be followed by the courts unless there are cogent reasons for change. (*State v. Omaechevviaria,* 27 Ida. 797, 803, 152 Pac. 280; *Bashore v. Adolf,* 41 Ida. 84, 91, 238 Pac. 534, 41 A. L. R. 932; *City of Pocatello v. Ross,* 51 Ida. 395, 408, 6 Pac. (2d) 481; *In re Speer,* 53 Ida. 293, 23 Pac.

---

[1] *Terminal Warehouse Co. v. City of Milwaukee,* 205 Wis. 607, 238 N. W. 513, 80 A. L. R. 247; *Lincoln Fireproof Warehouse Co. v. City of Milwaukee,* 208 Wis. 70, 241 N. W. 623, 242 N. W. 558; *Grand Rapids & I. Ry. Co. v. City of Grand Rapids,* 137 Mich. 587, 100 N. W. 1012, 4 Ann. Cas. 1195; *Red Willow County v. Chicago B. & Q. R. Co.,* 26 Neb. 660, 42 N. W. 879; *Town of Bristol v. Bristol Railroad Co.,* 91 Vt. 223, 100 Atl. 37.

[2] *Minneapolis St. P. & S. S. M. Ry. Co. v. Douglas County,* 159 Wis. 408, 150 N. W. 422, Ann. Cas. 1916E, 1199; *Chicago etc. R. Co. v. Board of Supervisors,* 48 Wis. 666, 5 N. W. 3; *Chicago etc. Ry. Co. v. Douglas County,* 122 Wis. 273, 99 N. W. 1030.

(2d) 239, 88 A. L. R. 1086; *United Pacific Ins. Co. v. Bakes,* 57 Ida. 537, 67 Pac. (2d) 1024.)

Between 1917 and 1935 the legislature met seven times and is presumed to know that the state board of equalization was assessing this property in the manner now challenged, but did not indicate such method was contrary to the statute. Between 1925 and 1935 the legislature met four times without resultant rebuke. In the absence of pursued court action the county assessors must be considered to have acquiesced in the construction placed on the statute by the state board.

It does not seem the construction given the statute by the state board for such length of time and not refuted by the county assessors is so clearly wrong as to require its overthrow now.

No question of exemption is involved.

Plaintiffs' prayer that the order of the state board be vacated and set aside is denied, except as to the land leased to the Reclamation Service and vacant lots. These are to be assessed by the county assessor, not the state board.

Ailshie, C. J., and Budge, J., concur.

MORGAN, J., Dissenting.—Three sections of the statute having a direct bearing on the question before us, are:

§ 61–113, defining the term "operating property."

§ 61–601, designating the property which shall be assessed by the state board of equalization; and,

§ 61–603, designating the property to be assessed by the county assessor.

These sections were originally a part of 1913 Sess. Laws, chapter 58, were enacted at the same time, with respect to the same subject matter, and are, therefore, *in pari materia* and must be construed together. (*Achenbach v. Kincaid,* 25 Ida. 768, 140 Pac. 529; *Peavy v. McCombs,* 26 Ida. 143, 140 Pac. 965; *Boise Payette Lumber Co. v. Sharp,* 45 Ida. 611, 264 Pac. 665; *Estate of Rothchild,* 48 Ida. 485, 283 Pac. 598.) When so construed, the parts applicable to the facts of this case, read as follows:

(61–113) "The term 'operating property' as used in this act shall include all franchises, rights of way, roadbeds, tracks, terminals, rolling stock, equipment, . . . . lands, . . . . all immovable or movable property owned, or occupied by, or operated in connection with any railroad . . . . wholly or partly within this state, and all station grounds and all structures upon the rights of way and station grounds, all other immovable or movable property used, operated or occupied by any person owning, operating or constructing any line or railroad . . . . wholly or partly within this state, and reasonably necessary to the maintenance and operation of such road or line, or in conducting its business, and shall include all title and interest in such property, as owner, lessee ,or otherwise."

(61–601) "The operating property of all railroads, . . . . and the franchises of all persons owning, or operating as lessee, or constructing any . . . . railroads, wholly or partly within this state, shall be assessed for taxation for state, county, city, town, village, school district and other purposes, ·exclusively by the state board of equalization." [Provided] (61–603) "All property belonging to any person owning, operating or constructing any railroad . . . . wholly or partly within this state, not included within the meaning of the term 'operating property,' as defined in this act; namely, property not reasonably necessary for the maintenance and successful operation of such railroad, . . . . including vacant lots and tracts of land, and lots and tracts of land with the buildings thereon not used in the operation of such railroad, . . . . also tenement and resident property, except section houses, also hotels and eating houses, situate more than 100 feet from the main track of any such railroad, shall be assessed by the assessor of the county wherein the same is situated."

In *Peavy v. McCombs,* 26 Ida. 143, 149, 140 Pac. 965, 967, it is said:

"The rule that statutes *in pari materia* should be construed together applies with peculiar force to statutes passed at the same session of the legislature; they are to be construed together, and should be so construed, if possible, as to harmonize and give force and effect to the provisions of each.

If, however, they are necessarily inconsistent, the statute which deals with the common subject matter in a more minute and particular way will prevail over a statute of a more general nature. These rules are so well established as to neither require nor justify any citations of authorities in support of them.''

That case is cited in *Koelsch v. Girard*, 54 Ida. 452, on page 458, 33 Pac. (2d) 816. See, also, *State v. Taylor*, 58 Ida. 656, 667, 78 Pac. (2d) 125, 129, 130, and cases therein cited.

Applying that rule of construction to the sections of the statute under consideration, it will be observed that section 61-603, which specifies the railroad property to be assessed by the county assessor, treats the subject in a more minute and particular way than do the other sections, in that it specifies ''property not reasonably necessary for the maintenance and successful operation of such railroad, . . . . including vacant lots and tracts of land, and lots and tracts of land with the buildings thereon not used in the operation of such railroad, . . . . also tenement and resident property, except section houses, also hotels and eating houses, situate more than 100 feet from the main track of such railroad,'' and provides that such property, so specified, shall be assessed by the county assessor. These specific provisions are controlling over the provisions in the other sections, above quoted, expressed in general terms.

The sections of the code applicable to this case, when read and construed together, as required by the well established rules of statutory construction, and as above set forth, leave no doubt of the legislative intention that the county assessor should assess the property involved herein. Where the meaning of a statute is clear, as is that here under consideration, to apply to it the rule that executive construction, long acquiesced in, is binding on and will be followed by the courts, is to hold that long continued or repeated violations of the law have the effect of amending it to conform to the violations.

The order of the state board of equalization should be vacated and set aside.

HOLDEN, J., Dissenting.—Plaintiffs challenge the jurisdiction of the board to assess the property in question on the ground it is non-operating property. This court held in *Lansdon v. State Board of Canvassers,* 18 Ida. 596, 111 Pac. 133, that:

"A 'writ of review' brings up the record of the tribunal, board, or body whose acts are to be examined, and is issued for the purpose of reviewing the law applicable to the case, instead of examining the facts of the case, except in so far as an examination of the facts is necessary in the determination of the single question of jurisdiction. The purpose of the review is to determine primarily the law applicable to the case, rather than facts of the case."

Section 61–601, I. C. A., provides:

"The operating property of all railroads, . . . . wholly or partly within this state, shall be assessed for taxation for state . . . . purposes, exclusively by the state board of equalization."

In *Ada County et al. v. Bottolfsen, Governor, et al., ante,* p. 64, 97 Pac. (2d) 599, 601, we held that:

"Under the provisions of that section the board has the power to and *must* determine whether property is, or is not, used in the operation of a railroad and whether property is, or is not, within the definition of Section 61–113, I. C. A., necessary to the maintenance and operation of a railroad in the conduct of its business. If the Board determines the property is 'operating property' within the definition of the statute, then, and in that case and in that case only, it has power to assess it; otherwise, jurisdiction to assess is vested under the provisions of Section 61–603, I. C. A., in the assessor of the county in which the property is located. In other words, the statute, Section 61–601, *supra,* vests original jurisdiction in and *makes it the duty of* the Board to determine whether property is or is not 'operating property.' " (Italics mine.)

In support of its jurisdiction to assess the board pleaded its record as follows:

"ANNUAL MEETING STATE BOARD OF EQUALIZA-
TION 1939
FIRST DAY

Boise, Idaho
August 14, 1939

The annual meeting of the State Board of Equalization
convened in a regular session in the Governor's office at 10.00
o'clock A. M. on the above named date. All members and the
Secretary were present as follows:

Governor C. A. Bottolfsen, Chairman
T. W. Taylor, Attorney General
Mrs. Myrtle Enking, Treasurer
George Curtis, Secretary of State
Calvin E. Wright, Auditor
Byron Defenbach, Secretary.

. . . .

A petition prepared by Willis C. Moffatt, attorney for cer-
tain taxpayers and filed on their behalf, was presented to the
Board. The petition involved the question of taxation on
certain lands which the Oregon Short Line Railroad Co.
desires to retain utility assessment; the petitioners asking
that part of said property be assessed locally. No discus-
sion and no action taken.

. . . .

No further business to be considered, the Governor asked
the meeting be recessed until 10.00 o'clock A. M. Tuesday,
August 15th. There being no objection, the session adjourned
by unanimous consent until time and date suggested by Gover-
nor Bottolfsen.

ATTEST: (signed) BYRON DEFENBACH
 Secretary
APPROVED: (signed) C. A. BOTTOLFSEN
 Chairman

. . . .

STATE BOARD OF EQUALIZATION. REGULAR SES-
SION 1939

Fourth day August 17, 1939

The meeting was called to order in the Chamber of the
House of Representatives at 10.00 o'clock A. M., with Gov-
ernor Bottolfsen presiding.

. . . .
Mr. Maurice H. Greene and Mr. Willis C. Moffatt, attorneys, appeared for Ada County and certain Boise taxpayers, asking a change in classification of real property and buildings constructed on Citizen's right-of-way. Counsel for the Union Pacific answered the complaint. The Governor stated that the Board would take the matter under advisement and render an opinion later.

. . . .
There being no further business, the meeting adjourned until 10.00 o'clock Friday morning, August 18th.

ATTEST: (signed) BYRON DEFENBACH
 Secretary
APPROVED: (signed) C. A. BOTTOLFSEN
 Chairman

. . . .

STATE BOARD OF EQUALIZATION, REGULAR SESSION 1939

FRIDAY
Eleventh Day August 25, 1939
The Board met in executive session in the Governor's office at 9:30 A. M., with all members present. The Board took into consideration the matter of the various railroad companies, fixing their final assessment for the year 1939 as follows:

Oregon Short Line Railroad Company and Oregon Washington R. R. and N. Co.........$51,774,222.00

. . . .
In each case motion was regularly made and seconded, the question put by the Chairman and carried unanimously.

The Board spent the rest of the day in discussion of the various valuations but made no final decisions. At 4:30 P. M., recess was taken until Saturday morning, August 26th, at 9:30 in the Governor's office.

ATTEST: (signed) BYRON DEFENBACH
 Secretary
APPROVED: (signed) C. A. BOTTOLFSEN
 Chairman."

While it was alleged in the application (*Ada County v. Bottolfsen, supra*) and therefore recited in the opinion that

the board assessed the several tracts of land described in such application, its record shows the board made only a final assessment in the sum of $51,744,222, but upon what particular property does not appear. Even though Ada County had not filed a petition with the board August 14, 1939, requesting it to refrain from assessing these tracts, the board would have levied the final assessment against the Short Line, just as it did against the property of other railroads not involved in this controversy. Bearing that in mind and also that the record shows the chairman "stated that the Board would take the matter [assessing the property described in the Ada County petition filed August 14, 1939] under advisement and render an opinion later," it is evident the board intended and fully understood it was necessary to "render an opinion" as to whether the property in question was or was not operating property of the Short Line, but overlooked the matter of determining that question. But whether the board overlooked determining the question or concluded it was unnecessary, the above-quoted record clearly shows it did not determine the property in question was operating property, nor did it determine such property was necessary to the maintenance and operation of the Oregon Short Line Railroad Company in the conduct of its business. Not having done that, the entry of a final assessment against the property of the Short Line was premature in so far as it could be said to affect the property in question here. Substantially the same situation arose in *Stearns v. Graves et al., ante,* p. 232, 99 Pac. (2d) 955. In that case an action *ex contractu* was united with an action *ex delicto.* A demurrer was interposed to the complaint upon that ground. The trial court, without passing upon the demurrer, rendered and entered final judgment of dismissal of the action on the contract. On appeal this court held the rendition and entry of the judgment of dismissal was premature in that the court had failed to first rule on the demurrer.

This court held in *Orr v. State Board of Equalization,* 3 Ida. 190, 28 Pac. 416, that:

"The State Board of Equalization, in exercising the functions conferred upon it by law, is exercising judicial func-

tions." (See, also, *North West Light etc. Co. v. Alexander*, 29 Ida. 557, 566, 160 Pac. 1106).

The board, sitting as a constitutional tax-assessing tribunal, has exclusive original jurisdiction to determine whether property is operating property and necessary to the maintenance and operation of a railroad. In other words, the board has exclusive original jurisdiction to determine any and all controversies between, for instance, a railroad and a county (as in the case at bar), as to whether property is non-operating property and therefore assessable by a county, or operating property, and, consequently, not assessable by a county. In the controversy before the board, brought here for review, the question was squarely presented as to whether the property described in Ada County's petition was or was not operating property of the Short Line. In that controversy the board was sitting as a constitutional tax-assessing tribunal. As such tribunal it was its duty to decide the controversy.

As we held in *Ada County v. Bottolfsen, supra,* "if the Board determines the property is 'operating property' within the definition of the statute, then, and in that case and in that case only, it has power to assess it." In other words, where, as in the instant case, a county claims the right to assess railroad property on the ground it is non-operating property and that the state board of equalization is therefore without jurisdiction to assess it, the board must first determine the character of the property. If it determines the property is operating property, then it may assess; otherwise not.

Of course, this constitutional tax-assessing tribunal (state board of equalization) is not required to render its decision with all the precision and detail of a court of equity (for instance, make findings of fact and conclusions of law). In fact, it is not required to render judgment at all, as courts do. It may employ any method of determining a tax controversy it chooses,—for example, an order, or an appropriate resolution—the method usually employed by boards. No order or resolution having been entered by the board determining the controversy between the Short Line and Ada County, it follows this matter should be remanded with directions to the board to do so, in that this court cannot,

in the first instance, decide the controversy—the statute vests original jurisdiction in and makes it the duty of the board to first determine whether property is, or is not, operating property.